**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT D. CUSTER, as a Participant
of and Trustee for the Sheet Metal
Workers' National Pension Fund,
Plaintiff-Appellant,

v.

RAYMOND J. SWEENEY,
Defendant-Appellee,

and

HARRY HUGE; KRISTA FOGLEMAN;
ROGOVIN, HUGE & SCHILLER;
DONOVAN, LEISURE, NEWTON &
IRVINE; SHEA & GOULD,
Defendants.

HARRY HUGE; ROGOVIN, HUGE &
SCHILLER,
Amici Curiae.

No. 95-1077

ROBERT D. CUSTER, as a Participant
of and Trustee for the Sheet Metal
Workers' National Pension Fund,
Plaintiff-Appellee,

v.

RAYMOND J. SWEENEY,
Defendant-Appellant,

and

HARRY HUGE; KRISTA FOGLEMAN;
ROGOVIN, HUGE & SCHILLER;
DONOVAN, LEISURE, NEWTON &
IRVINE; SHEA & GOULD,
Defendants.

No. 95-1079

HARRY HUGE; ROGOVIN, HUGE &
SCHILLER,
Amici Curiae.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-94-910-A)

Argued: December 4, 1995

Decided: July 22, 1996

Before HALL and NIEMEYER, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Hall and Senior Judge Butzner joined.

_____

2

**COUNSEL**

**ARGUED:** William Willis Carrier, III, TYDINGS & ROSENBERG, Baltimore, Maryland, for Appellant. James J. McGuire, MAYER, BROWN & PLATT, New York, New York, for Appellee. **ON BRIEF:** J. Hardin Marion, Lawrence J. Quinn, TYDINGS & ROSENBERG, Baltimore, Maryland; William L. Stauffer, Jr., Kurt C. Rommel, R. Grant Decker, STAUFFER & ABRAHAM, Vienna, Virginia, for Appellant. Nicholas W. Lobenthal, Richard E. Rosberger, MAYER, BROWN & PLATT, New York, New York, for Appellee. John Rounsaville, Jr., Roger W. Yoerges, Anne D. Bolling, Steven P. Finizio, WILMER, CUTLER & PICKERING, Washington, D.C.; Michael C. Montavon, MICHAEL C. MONTAVON, P.C., Fairfax, Virginia, for Amici Curiae.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Robert D. Custer, a trustee of and participant in the Sheet Metal Workers' National Pension Fund, an employee benefit plan regulated by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., sued the plan's attorneys, alleging breach of ERISA fiduciary duties and legal malpractice. The district court dismissed Custer's ERISA claim on the ground that the attorney named in the ERISA count was not a plan fiduciary and declined to exercise jurisdiction over the malpractice claims, allowing Custer to prosecute those claims in state court. The court also denied a defendant's motion for attorneys fees.

Custer appeals the dismissal of his ERISA claim, and Raymond J. Sweeney, one of the defendant attorneys, cross-appeals, contending that the district court erred in failing to dismiss Custer's malpractice claims with prejudice as preempted by ERISA. Sweeney also cross-appeals the district court's refusal to award him attorneys fees. We now affirm.

I

Until his resignation in mid-1993, the late Edward J. Carlough served as chairman of the Sheet Metal Workers' National Pension

3

Fund and president of the Sheet Metal Workers' International Association, the pension plan's affiliated union. While holding those positions, Carlough allegedly squandered millions of dollars of the pension plan's assets (1) to subsidize the lease of a private jet primarily for his personal use and (2) to purchase, improve, furnish, operate, and reside at a lavish mansion under the guise that it was needed as a second conference center. Sweeney, Carlough's nephew, served as legal counsel to the pension plan and to the two trustee committees that oversaw the airplane and conference center transactions.

In July 1994, Custer filed this action against Sweeney and the pension plan's other attorneys, alleging (1) that Sweeney breached fiduciary duties imposed by ERISA by making the arrangements for Carlough to consummate the airplane and conference center transactions and (2) that Sweeney and the other legal counsel to the pension plan committed legal malpractice in their representation of the plan. Custer predicated federal jurisdiction over the legal malpractice claims on diversity of citizenship, 28 U.S.C. § 1332, and supplemental jurisdiction, 28 U.S.C. § 1367.

The district court granted the defendants' Rule 12(b)(6) motion to dismiss Custer's suit on the ground that Custer's allegations failed to establish that Sweeney, as counsel to the pension plan, qualified as a fiduciary under ERISA. The court, however, granted Custer leave to amend his complaint to allege sufficient "indicia of fiduciary position." The court also dismissed without prejudice Custer's malpractice claims. It found an absence of complete diversity and declined to exercise its discretionary supplemental jurisdiction over the malpractice claims.

Custer filed an amended complaint, reasserting in more detail his ERISA claim against Sweeney. He alleged that Sweeney not only had exercised "de facto control over [the] arrangements for leasing the [a]irplane and the acquisition, build-out, furnishing, operation, and maintenance" of the conference center, but also had authorized expenditures and approved payments for those purposes from pension plan funds. Custer appended dozens of documents that purported to illustrate Sweeney's discretionary control over plan assets and management. In the amended complaint, Custer predicated federal subject matter jurisdiction over his malpractice claims against Sweeney and

4

the other former counsel to the pension plan solely on the court's supplemental jurisdiction.

Again the defendants moved to dismiss the complaint. While Sweeney argued that he was not an ERISA fiduciary, all of the defendants argued that Custer's malpractice claims were preempted by ERISA and failed to establish their duty to monitor the pension plan's airplane and conference center investments for compliance with ERISA. Sweeney also requested attorneys fees under both Federal Rule of Civil Procedure 11(c) and ERISA § 502(g), 29 U.S.C. § 1132(g), on the ground that Custer lacked a good faith basis for his claims.

The district court dismissed Custer's ERISA claim against Sweeney with prejudice, concluding that Custer's second attempt to plead Sweeney's fiduciary status under ERISA was "at best hopeless or at worst contrived." It dismissed the legal malpractice claims without prejudice, declining to exercise supplemental jurisdiction over them. Finally, the court denied Sweeney's motion for attorneys fees because it did "not believe that there [was] a sufficient inference of bad faith" on Custer's part.

Custer appeals the district court's dismissal of his ERISA claim, and Sweeney cross-appeals the district court's failure to dismiss the malpractice claim with prejudice as preempted by ERISA. Sweeney also contends that the district court abused its discretion in refusing to award him attorneys fees.*

II

We begin with Custer's contention that the district court erred in dismissing his ERISA claim against Sweeney for breach of fiduciary duty. After affording Custer the opportunity to replead that claim, the district court observed that Custer's amended complaint still alleged "that Sweeney was at most an attorney and consultant who took care

_____

*None of the fund's other counsel is a party to this appeal. But Harry Huge and his former law firm, Rogovin, Huge & Schiller, have filed an amicus brief arguing that ERISA substantively preempts Custer's malpractice claims.

5

of the ministerial, day-to-day payment of bills, securing of funds with which to meet Fund obligations, and monitoring the progress of construction and operations on Fund property." Concluding that such activities "completely fail[ed] to establish the exercise of the type of discretion or control necessary to hold Sweeney liable as an ERISA fiduciary," the court dismissed Custer's ERISA claim with prejudice. Whether the district court acted properly thus depends on whether Sweeney qualifies as a "fiduciary" under ERISA.

"[T]he concept of a fiduciary under ERISA is broader than the common law concept of a trustee." Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 418 n.3 (4th Cir. 1993). It includes not only those "named [as fiduciaries] in the plan instrument, or who, pursuant to a procedure specified in the plan, [are] identified as . . . fiduciar[ies]," 29 U.S.C. § 1102(a)(2), but any individual who de facto performs specified discretionary functions with respect to the management, assets, or administration of a plan. According to§ 3(21)(A) of ERISA:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

While an attorney's duty to his client is that of a fiduciary, see F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1259 (2d Cir. 1987), the mere fact that an attorney represents an ERISA plan does not make the attorney an ERISA fiduciary because legal representation of ERISA plans rarely involves the discretionary authority or control required by the statute's definition of"fiduciary." According to the regulations promulgated by the Department of Labor--the agency charged with enforcing ERISA--an attorney or other profes-

6

sional service provider who represents an ERISA plan will not qualify as an ERISA fiduciary so long as he "performs purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons." 29 C.F.R. § 2509.75-8 (D-2); see also 29 C.F.R.§ 2509.75-5 (D-1) (applying ERISA's definition of "fiduciary" to attorneys); Useden v. Acker, 947 F.2d 1563, 1577 (11th Cir. 1991) (holding that law firm was not ERISA fiduciary because it did not "depart[ ] from the usual functions of a law firm or otherwise effectively or realistically control[ ] the [ERISA] Plan"), cert. denied , 508 U.S. 959 (1993); Nieto v. Ecker, 845 F.2d 868, 870 (9th Cir. 1988); Yeseta v. Baima, 837 F.2d 380, 385 (9th Cir. 1988); F.H. Krear, 810 F.2d at 1259-60. Moreover, negligence in the provision of professional services does not create ERISA fiduciary status. See Pappas v. Buck Consultants, Inc., 923 F.2d 531, 538 (7th Cir. 1991); Nieto, 845 F.2d at 870-71. ERISA's careful allocation of fiduciary liability is consonant with the statute's "clear purpose" of ensuring ERISA plans "access to ordinary legal advice." Useden, 947 F.2d at 1578.

But merely because a person serves as legal counsel to a pension plan does not automatically preclude a finding that the attorney is also an ERISA fiduciary, at least as to some activities. Fiduciary status under ERISA is not "an all-or-nothing concept." Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992), cert. denied, 113 S. Ct. 1051 (1993). As we explained in Coleman , "the inclusion of the phrase `to the extent' in [ERISA's definition of `fiduciary'] means that a party is a fiduciary only as to the activities which bring the person within the definition." Id.; see also F.H. Krear, 810 F.2d at 1259. Therefore, to determine whether Custer has sufficiently alleged Sweeney's status as an ERISA fiduciary, we must discern from Custer's amended complaint the functions that Sweeney allegedly performed.

Conceding that the pension plan's documents do not expressly confer ERISA fiduciary status on Sweeney, Custer argues only that his amended complaint sufficiently pled Sweeney's de facto fiduciary status by alleging that Sweeney's activities "transcended the normal legal services rendered by plan counsel." Custer contends that his amended complaint reveals that Sweeney "caused the Fund to enter into, and continue with," both the airplane and conference center

7

transactions by (1) exercising discretionary decisionmaking authority over "all aspects" of those transactions and (2) "withh[olding] vital information [from] and actively deceiv[ing]" the pension plan's trustees. Sweeney argues, on the other hand, that the district court properly dismissed Custer's ERISA claim because his amended complaint "allege[s] not one fact tending to show that Mr. Sweeney exercised control or authority specifically over the decisions to acquire and retain [the conference center] or the [a]irplane." He maintains that, to the contrary, the substance of the complaint's allegations support the conclusion that Sweeney "performed purely ministerial functions." And, according to Sweeney, Custer's assertions that Sweeney usurped the other plan fiduciaries' decisionmaking authority over the airplane and conference center transactions amount to no more than allegations of negligence in the performance of ordinary professional services.

Having carefully reviewed the amended complaint de novo, accepting all of Custer's well-pleaded allegations as true and construing them in the light most favorable to Custer, see Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), cert. denied, 114 S. Ct. 1307 (1994), we agree with Sweeney. While Custer's amended complaint is replete with assertions of Sweeney's "discretionary authority, control, and responsibility over the management of the Fund and certain assets of the Fund," it nevertheless lacks any specific allegations capable of demonstrating that Sweeney transcended his role as legal counsel. See 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, 317-18 (2d ed. 1990) (noting that court need not accept plaintiff's "`unwarranted deductions,' `footless conclusions of law,' or `sweeping legal conclusions cast in the form of factual allegations'" (footnotes omitted)); see also Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994), cert. denied, 115 S. Ct. 1956 (1995). The amended complaint discloses that the trustee subcommittees that Sweeney represented made only non-binding recommendations to the pension plan's board of trustees, who ultimately decided to enter into the airplane and conference center transactions and retained authority over spending the pension plan's funds. And the documents appended to Custer's amended complaint illustrate that Sweeney performed only ministerial functions for the pension plan, such as soliciting bids for contracting work and approving the payment of bills, and that he lacked check-writing authority. See Useden, 947 F.2d at 1577 (affirming summary judgment for law firm on

8

ground that firm was not ERISA fiduciary where plaintiff alleged that "law firm deeply penetrat[ed] the governance of the Plan" by, inter alia, "drafting . . . amendments to the Plan on its own initiative" and providing "hybrid business-legal . . . advice").

Custer's allegations that Sweeney usurped trustee decisionmaking authority by controlling information relevant to the propriety of the airplane and conference center transactions also fail to state an ERISA claim. If true, the assertions establish at most that Sweeney violated legal duties arising from his representation of the ERISA plan. But they do not satisfy the requirement that Sweeney caused the plan's trustees "to relinquish [their] independent discretion in investing the plan's funds and follow the course [he] prescribed." Schloegel v. Boswell, 994 F.2d 266, 271-72 (5th Cir.), cert. denied, 114 S. Ct. 440 (1993).

The amended complaint that the district court dismissed represents Custer's second attempt to plead Sweeney's ERISA fiduciary status and impose on Sweeney personal liability under ERISA for his role in advising the Sheet Metal Workers' National Pension Fund. Given the district court's explicit instructions to Custer to allege in his amended complaint all that he could properly allege about Sweeney's role and the inadequacy of Custer's latest attempt, we affirm the district court's dismissal with prejudice of Custer's ERISA claim against Sweeney.

III

In his cross-appeal, Sweeney contends that the district court erred in dismissing Custer's malpractice claim without prejudice for lack of jurisdiction, rather than with prejudice as substantively preempted by ERISA. Sweeney argues that even though Custer's malpractice claim is pleaded as a state common law claim, it arises under ERISA because (1) ERISA completely preempts the claim and (2) the claim necessarily presents questions of federal law substantial enough to create federal-question jurisdiction.

Before we can address Sweeney's argument, we must decide the threshold issue of whether Sweeney has standing to appeal that decision. Relying on our decision in HCA Health Services v. Metropolitan

9

Life Ins. Co., 957 F.2d 120 (4th Cir. 1992), Custer suggests that Sweeney "may not be sufficiently aggrieved by the district court's decision" to present a justiciable issue.

It is a well-established rule of "federal appellate practice . . . derived from the statutes granting appellate jurisdiction and the historic practices of the appellate courts" that "[o]rdinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom." Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333 (1980). This court accords "the party `aggrieved' concept . . . a practical rather than hypertechnical meaning." Department of Defense v. Federal Labor Relations Auth., 879 F.2d 1220, 1222 (4th Cir. 1989). A party may be aggrieved by a district court decision that adversely affects its legal rights or position vis-a-vis other parties in the case or other potential litigants, but a "desire for better precedent does not by itself confer standing to appeal." HCA Health Services, 957 F.2d at 124. Thus, in HCA Health Services, we held that the appellant, who had prevailed in the district court on its interpretation of state law, lacked standing to appeal the district court's failure to reach its ERISA preemption defense where there was merely a "hypothetical possibility" that the issue would again arise in a suit against the appellant "sometime in the future." Id. at 125.

In this case, however, because Custer has already filed a legal malpractice claim against Sweeney in Virginia state court, which has been stayed pending resolution of this appeal, HCA Health Services is inapposite. The district court's dismissal order presents a certainty, rather than a mere hypothetical possibility, that Sweeney will be forced to incur considerable expense relitigating Custer's malpractice claim in state court. Accordingly, we conclude that Sweeney has standing to cross-appeal the district court's refusal to exercise federal jurisdiction over Custer's malpractice claim.

IV

We turn next to whether the district court was required to exercise federal-question jurisdiction over Custer's malpractice claim or whether it could exercise the discretionary authority of supplemental jurisdiction to dismiss it without prejudice. See United Mine Workers

10

v. Gibbs, 383 U.S. 715, 726 (1966). This issue reduces to whether Custer's malpractice claim independently "arises under" the ERISA statute, creating federal-question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). If it does, the district court could not have declined to exercise jurisdiction over the malpractice claim. See id.; Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (recognizing "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"); McLaughlin v. United Va. Bank, 955 F.2d 930, 934 (4th Cir. 1992).

As noted, Sweeney advances two independent arguments for his position that Custer's malpractice claim arises under ERISA. First, he contends that Custer's legal malpractice claim is in essence an ERISA claim because it is completely preempted by ERISA. Alternatively, he maintains that even if Custer's malpractice claim is not created by ERISA, it still arises under federal law within the meaning of 28 U.S.C. § 1331 because its resolution requires the interpretation of substantial ERISA issues.

A

For his "complete preemption" argument, Sweeney contends that Custer's malpractice claim falls "squarely within" ERISA's civil enforcement provision, § 502, 29 U.S.C. § 1132, because, even if prosecuted against non-fiduciaries, the claim "purports to remedy harm arising out of breaches of ERISA fiduciary duties." Relying on the Supreme Court's decision in Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987), Sweeney maintains that Custer's malpractice claim is, therefore, completely displaced by federal law for purposes of establishing federal-question jurisdiction.

As an initial matter, we recognize that the "well-pleaded complaint rule" ordinarily directs us to look no farther than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331. See Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908). The well-pleaded complaint rule enforces the principle that the plain-

11

tiff is the master of his complaint and generally permits plaintiffs to "avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

The complete preemption doctrine, however, is "an independent corollary of the well-pleaded complaint rule," Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 22 (1983), and trumps the plaintiff's characterization of his claim by "convert[ing] an ordinary state common law complaint into one stating a federal claim." Taylor, 481 U.S. at 65; see also Franchise Tax Bd., 463 U.S. at 24 ("[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily `arises under' federal law"). The complete preemption doctrine recognizes that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Taylor, 481 U.S. at 63-64; see also Caterpillar, 482 U.S. at 393. Underlying the complete preemption doctrine is the notion that the federal policies implicated by a federal statute are sufficiently important to override the plaintiff's effort to rely on state law. Although federal preemption defenses do not ordinarily permit federal courts to exercise subject matter jurisdiction over claims that a plaintiff predicates on state law, the complete preemption doctrine confers federal-question jurisdiction over such claims. Taylor, 481 U.S. at 63-64.

In applying the complete preemption doctrine, courts generally look first to the preemptive scope of the federal statute and second to its preemptive force. See, e.g., Taylor, 481 U.S. at 62-63; Kramer v. Smith Barney, 80 F.3d 1080, 1083-84 (5th Cir. 1996); Rosciszewski v. Arete Assoc., Inc., 1 F.3d 225, 229-33 (4th Cir. 1993). A statute's preemptive force is measured by the extent to which it precludes state court consideration of claims falling within the statute's preemptive scope. In Taylor, for example, the Supreme Court reasoned that ERISA completely preempted the plaintiff's claim for improper processing of a benefits claim under an ERISA employee benefits plan because (1) such claims fell within the scope of ERISA's express preemption provision, and (2) ERISA's language and legislative history evinced a clear legislative intent to imbue ERISA with a preemptive force so extraordinary as to displace state law claims, converting them into claims arising under ERISA. Only where the federal statute's

12

preemptive scope is sufficiently broad to reach a purported state law claim and its preemptive force is sufficiently powerful to convert that particular claim into a federal claim will the complete preemption doctrine apply.

Following that analytical sequence, we consider first whether Custer's malpractice claim falls within the scope of ERISA's preemption provision, § 514(a), 29 U.S.C. § 1144(a). Custer maintains that his legal malpractice claim relies entirely on state common law and that ERISA's preemptive scope does not reach such a claim. He argues that his malpractice claim does not "relate to" ERISA within the meaning of § 514(a) because it arises under a state "law of general applicability" and involves "an area traditionally the subject of state regulation." Because professional negligence and malpractice claims against third-party service providers to an ERISA plan do not implicate "the essential functions of an employee benefit plan, such as funding, benefits, reporting, and administration," Custer insists that Congress did not intend ERISA's preemptive scope to reach such claims.

Section 514(a) of ERISA provides that ERISA preempts "any and all State laws" that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). For ERISA preemption purposes, "State law" includes both statutory and common law. 29 U.S.C. § 1144(c)(1). The Supreme Court and this court have given the phrase "relate to" in § 514(a) its "broad common-sense meaning." See Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985); Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 418 (4th Cir. 1993). A state law falls within ERISA's preemptive scope "if it has a connection with or reference to" an ERISA plan. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983). State laws may be preempted even if consistent with ERISA's substantive provisions, see Metropolitan Life, 471 U.S. at 739, and not specifically designed to affect ERISA plans, Shaw, 463 U.S. at 98. The absence of a particular remedy under ERISA, moreover, has no bearing on whether a state law falls within the scope of § 514. Custer, 12 F.3d at 418-19.

Though broad, ERISA's preemption provision does have limits. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law

13

`relates to' the plan." Shaw, 463 U.S. at 100 n.21. In Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825 (1988), for example, the Supreme Court held that ERISA did not bar a state-law garnishment action against an ERISA employee welfare benefit plan. The Court explained that ERISA does not preempt "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" even though such claims "obviously affect[ ] and involv[e] ERISA plans and their trustees." Id. at 833; see also Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987) (state law requiring companies to make lump-sum severance payments when closing plant not preempted by ERISA); Aetna Life Ins. Co. v. Borges, 869 F.2d 142 (2d Cir.) (state escheat law not preempted by ERISA), cert. denied, 493 U.S. 811 (1989); Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821 (1st Cir.), cert. denied, 488 U.S. 909 (1988) (spouse's claim for emotional distress from husband's denial of benefits not preempted by ERISA); Firestone Tire & Rubber Co. v. Neusser, 810 F.2d 550 (6th Cir. 1987) (municipal ordinance imposing income tax of general application on employees' contributions to benefit plans not preempted by ERISA).

Whether ERISA preempts legal malpractice claims against attorneys representing ERISA plans is a question of first impression for the federal circuit courts, although several federal district courts have addressed the issue, uniformly concluding that ERISA does not preempt such claims. See, e.g., Sullivan v. Lampf, Lipkind, Prupis, Petigrow & Labue, 1994 WL 669624, at *9-*10 (D.N.J. Nov. 21, 1994) (unpublished); Anoka Orthopaedic Associates, P.A. v. Mutschler, 773 F. Supp. 158, 164, 168 (D. Minn. 1991). Moreover, the various circuit and district courts that have faced the preemption question in cases involving professional negligence or malpractice claims against other service providers to ERISA plans have declined to read ERISA's preemptive scope so broadly. See, e.g., Painters of Phila. Dist. Council No. 21 Welfare Fund v. Price Waterhouse, 879 F.2d 1146, 1153 n.7 (3d Cir. 1989) ("ERISA does not generally preempt state professional malpractice actions"); Airparts Co. v. Custom Benefit Services of Austin, Inc., 28 F.3d 1062, 1065 (10th Cir. 1994) (consultant); Bourns, Inc. v. KPMG Peat Marwick, 876 F. Supp. 1116, 1122 (C.D. Cal. 1994) (auditor); Berlin City Ford, Inc. v. Roberts Planning Group, 864 F. Supp. 292, 296 (D.N.H. 1994) (consultant); Mertens v. Kaiser Steel Retirement Plan, 829 F. Supp. 1158, 1162 (N.D. Cal. 1992)

14

(actuary); <u>Richards v. Union Labor Life Ins. Co.</u>, 804 F. Supp. 1101, 1103-04 (D. Minn. 1992) (actuary); <u>Carl Colteryahn Dairy, Inc. v. Western Pa. Teamsters & Employers Pension Fund</u>, 785 F. Supp. 536, 543 (W.D. Pa. 1992) (accountants and actuaries); <u>Framingham Union Hosp., Inc. v. Travelers Ins. Co.</u>, 721 F. Supp. 1478, 1490 (D. Mass. 1989) (accountant); <u>Isaacs v. Group Health, Inc.</u>, 668 F. Supp. 306, 312-13 (S.D.N.Y. 1987) (actuary). Indeed, Sweeney has not cited a single decision holding that ERISA preempts a malpractice or professional negligence claim against a service provider to an ERISA plan.

We now join this unanimous body of federal law and conclude that Custer's legal malpractice claim against Sweeney does not fall under ERISA's preemptive umbrella. We do so because we do not believe that Congress intended ERISA to preempt state law malpractice claims involving professional services to ERISA plans. ERISA does not evince a clear legislative purpose to preempt such traditional state-based laws of general applicability, and permitting Custer's claim would not undermine the congressional policies that underlie ERISA.

A presumption that ERISA does not preempt legal malpractice claims arises because the law governing legal malpractice represents a traditional exercise of state authority. <u>See Mackey</u>, 486 U.S. at 833; <u>Airparts</u>, 28 F.3d at 1066-67; <u>Painters</u>, 879 F.2d at 1153 n.7; <u>Firestone</u>, 810 F.2d at 555. Federalism concerns strongly counsel against imputing to Congress an intent to displace "a whole panoply of state law in this area" absent some clearly expressed direction. <u>Painters</u>, 879 F.2d at 1153 n.7; <u>see also Firestone</u>, 810 F.2d at 555. We are especially wary of finding ERISA preemption in this case because the logic of such a holding would sweep into federal court a wide range of professional malpractice claims, like Custer's, that allege the provision of negligent advice about the requirements of federal law.

Moreover, we do not believe that permitting state law malpractice claims against attorneys representing ERISA plans would in any way compromise the policies that ERISA was designed to promote. In enacting ERISA, Congress sought "to protect . . . the interests of participants in employee benefit plans and their beneficiaries, . . . by

15

establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and . . . by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). A legal malpractice claim "does not affect the structure, the administration, or the type of benefits provided by an ERISA plan." Rebaldo v. Cuomo, 749 F.2d 133, 139 (2d Cir. 1984), cert. denied, 472 U.S. 1008 (1985); see also Airparts, 28 F.3d at 1066. Nor does such a claim implicate "the relations among the traditional [ERISA] plan entities[,] . . . [the] principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." Id. Thus, a legal malpractice claim such as that at issue here does not fall within any of the categories of laws that courts have generally held to be preempted by ERISA: "laws . . . that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." Aetna Life Ins. Co., 869 F.2d at 146; see also Airparts, 28 F.3d at 1064-65.

Sweeney argues that even if ERISA does not generally preempt all legal malpractice claims, it preempts Custer's malpractice claim because that claim depends upon proof that Sweeney negligently provided inaccurate legal advice concerning ERISA's fiduciary standards. Sweeney attempts to analogize this case to Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140 (1990), in which the Supreme Court held that ERISA preempted a wrongful discharge claim brought under Texas law, which required the plaintiff to prove that an ERISA plan existed and that his employer "had a pension-defeating motive in terminating the employment." Because "the existence of a pension plan [was] a critical factor in establishing liability under the State's wrongful discharge law," the Ingersoll-Rand Court concluded that the plaintiff's claim "relate[d] not merely to pension benefits, but to the essence of the pension plan itself." Id. at 139-40.

In Ingersoll-Rand, however, the Court reasoned that permitting "state based" wrongful discharge actions would subject plans and their sponsors to "conflicting directives among States or between States and the Federal Government," thereby imposing inefficient "administrative and financial burden[s] . .. to the detriment of plan beneficiaries." Id. at 142. Here, by contrast, Custer's claim affects neither the core functions performed by ERISA plans nor the central

16

ERISA players, and, therefore, "there is no threat that, by allowing this suit to go forward, conflicting regulations will emerge which will destroy the structural unity of the ERISA scheme." Airparts, 28 F.3d at 1066; see also Redall Indus., Inc. v. Wiegand , 876 F. Supp. 147, 152 (E.D. Mich. 1995) ("Even after the Ingersoll-Rand . . . decision[ ], courts have held that state common law claims based on professional malpractice and negligence . . . do not `relate to' an ERISA benefit plan and therefore are not preempted by ERISA"); Mertens, 829 F. Supp. at 1162 ("[T]he fact that professional malpractice claims require some interpretation of ERISA law does not mean that these claims are preempted by ERISA").

In light of our conclusion that Custer's legal malpractice claim is not within ERISA's preemptive scope, we need not decide whether ERISA's preemptive force would trump the well-pleaded complaint rule and convert Custer's claim into one "arising under" ERISA. See, e.g., Sullivan, 1994 WL 669624, at *10; Berlin City Ford, 864 F. Supp. at 296.

B

As an alternative ground for arguing that the district court had federal-question jurisdiction over Custer's malpractice claim and was therefore required to address its merits, Sweeney contends that the claim is "not a purely state law claim" because it raises "substantial federal questions." Sweeney maintains that resolution of Custer's malpractice claim would require the district court "to make findings as to a number of ERISA-related issues, including, centrally, whether [the conference center and airplane transactions] were improper under ERISA." We find Sweeney's argument unpersuasive.

To determine whether Custer's malpractice claim arises under ERISA despite ERISA's failure to preempt it, we need look no farther than the Supreme Court's decision in Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986). In Merrell Dow, the plaintiffs brought an action in state court alleging, inter alia, that the manufacturer and distributor of the drug Benedictin had negligently failed to warn consumers that the drug caused birth defects when ingested during pregnancy. Although the plaintiffs did not allege that federal law created their claim, they relied on the Federal Food, Drug, and Cos-

17

metic Act's definition of "misbranded," 21 U.S.C. § 301 et seq., to create a rebuttable presumption of the defendant's negligence. The defendant removed the case to federal court on the ground that the plaintiffs' case was based in part on federal law.

The Supreme Court held that the case had been improperly removed because it did not arise under federal law within the meaning of 28 U.S.C. § 1331. While reaffirming "that federal-question jurisdiction is appropriate when `it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims,'" id. at 813 (quoting Franchise Tax Bd., 463 U.S. at 13), the Court cautioned that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction," id. Rather, the Merrell Dow Court explained, the existence of federal question jurisdiction must be determined by "principled, pragmatic distinctions" and "careful judgments about the exercise of federal judicial power," id. at 813-14; only where the "federal interest at stake" is substantial will federal jurisdiction lie, id. at 814 n.12. In the "vast majority" of cases, therefore, federal-question jurisdiction exists only where federal law creates the plaintiff's cause of action. Id. at 808.

Because Sweeney concedes that ERISA does not provide a cause of action for malpractice against legal counsel to ERISA funds, that reason cannot establish that Custer's malpractice claim arises under federal law. See Clark v. Velsicol Chem. Corp. , 944 F.2d 196, 198 (4th Cir. 1991), cert. denied, 502 U.S. 1096 (1992); Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 152 (4th Cir. 1994). Moreover, the nature of the federal interest implicated by Custer's malpractice claim demonstrates that Congress did not intend for claims like Custer's to create federal subject matter jurisdiction. As noted, Custer's claim does not implicate in any significant way the federal policies that Congress sought to promote in enacting ERISA. Thus, the possibility that state courts may incorrectly or inconsistently interpret ERISA's fiduciary duty provisions in the context of malpractice claims like Custer's does not militate in favor of the exercise of federal subject matter jurisdiction in such cases. See Merrell Dow, 478 U.S. at 814-15 n.12; compare Smith v. Kansas City Title & Trust Co., 255 U.S. 180 (1921) (upholding federal jurisdiction over shareholder's bill to enjoin corporation from purchasing bonds issued

18

under Federal Farm Loan Act on ground that federal statute authorizing bonds' issuance was unconstitutional; claim implicated federal government's ability to raise capital) with Moore v. Chesapeake & Ohio Ry. Co., 291 U.S. 205 (1934) (finding no basis for federal jurisdiction over state statutory claim where plaintiff interposed defendant's failure to comply with Federal Safety Appliance Acts in reply to contributory negligence defense; because state statute only governed liability to employees who were injured while engaged in intrastate commerce, claim under statute did not implicate federal interests).

Accordingly, we conclude that the district court had discretion to decline to exercise supplemental jurisdiction over Custer's legal malpractice claim after dismissing his ERISA claim because Custer's legal malpractice claim is not completely preempted by ERISA and does not incorporate federal law issues substantial enough to create federal-question jurisdiction.

V

Finally, Sweeney challenges the district court's refusal to award him attorneys fees under Federal Rule of Civil Procedure 11(c) and ERISA § 502, 29 U.S.C. § 1132(g). We review a district court's refusal to award attorneys fees for abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) (Rule 11); Reinking v. Philadelphia Am. Life Ins. Co., 910 F.2d 1210, 1217 (ERISA).

Even though the district court dismissed Custer's ERISA claim against Sweeney with prejudice, it denied Sweeney's motion for attorneys fees because it did "not believe that there[was] a sufficient inference of bad faith on the part of [Custer]" in bringing that claim. Having reviewed Custer's complaint and Sweeney's allegations of bad faith, we cannot conclude that the district court abused its discretion in denying Sweeney attorneys fees.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

19