AETNA CASUALTY AND SURETY
COMPANY, etc., et al.,
Plaintiffs,

v.

WILLIAM M. MERCER,
INC., Defendant.

No. 96 C 3047.

United States District Court,
N.D. Illinois,
Eastern Division.

May 29, 1997.

See also, 1996 WL 406632.

Donald L. Mrozek, Lawrence R. Moleman and Julian C. Campbell of Hinshaw & Culbertson, Chicago, IL, for Plaintiffs.

Eric J. Van Vugt, Rodd Schneider, and Lori L. Kaczynski of Quarles & Brady, Milwaukee, WI and Michael C. Cook of Ross & Hardies, Chicago, IL, for Defendant.

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

Aetna Casualty and Surety Company ("Aetna") brought this diversity-of-citizenship action as subrogee of and assignee from Local 705 International Brotherhood of Teamsters Health and Welfare Fund ("Fund") and Fund's former trustees ("Trustees"), seeking to recover from William M. Mercer, Inc. ("Mercer") payments that Aetna had made pursuant to a Fiduciary Responsibility Insurance Policy ("Policy") that it had issued to Fund. To that end Aetna's Amended Complaint ("AC") asserts three state law claims: one sounding in negligence (Count I), another in contract (Count II) and a third seeking contribution (Count III).

Mercer has labeled its current motion as one seeking summary judgment under Fed. R.Civ.P. ("Rule") 56.[1] It asserts that all of Aetna's claims should be dismissed as preempted by the federal Employee Retirement Income Security Act of 1974 ("ERISA," 29 U.S.C. §§ 1001–1461)[2] because they "relate to" an employee benefit plan under ERISA § 1144(a). For the reasons stated in this memorandum opinion and order, Mercer's motion is denied.

### Nature of Mercer's Motion

■ As an initial matter, Mercer's motion is not accurately labeled as a Rule 56 motion for summary judgment. As Mercer states at its R. Mem. 3 (emphasis added):

The basis of Mercer's motion is that *even assuming, for purposes of this motion only, that Aetna's allegations are true* and that there thus are no disputed issues of material fact, Mercer is entitled to judgment as a matter of law.

■ Thus Mercer really attacks Aetna's AC for failure to state any viable claim, which is rather an appropriate Rule 12(c) motion.[3] But courts are not constrained by the tyranny of labels, so they may instead treat a mislabeled motion as its substantive equivalent (see, e.g., *International Business Lists, Ltd. v. AT & T*, 878 F.Supp. 102, 105 (N.D.Ill.1994) and cases cited there). In a similar situation this Court, sitting by designation in *Wilcox v. Niagara of Wis. Paper Corp.*, 965 F.2d 355, 357 n. 1 (7th Cir.1992), said this for our Court of Appeals:

[D]efendants have agreed solely for purposes of their motion to accept as true the allegations in [plaintiff's] Complaint. We are therefore not required to make the usual Rule 56 determination of whether

there exist any genuine issues of material fact. We need only determine whether, drawing all inferences from the Complaint's allegations in [plaintiff's] favor, his action ought to be dismissed as a matter of law.

Mercer's R. Mem. 2 contends that such a conversion is unwarranted under Rule 12(c) because it submitted four exhibits together with its motion. In that regard Rule 12(c) reads in part:

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motions shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Invoking the last part of that sentence, Aetna Mem. 4 n. 4 argues that it has not had time to explore the underlying facts fully, so that it cannot fairly rebut a full-fledged summary judgment motion. It asks for further time to conduct sufficient discovery before this Court rules on Mercer's Rule 56 motion.

■ Such a postponement is unnecessary, however, because the exhibits presented with Mercer's motion may properly be considered in connection with its purely legal preemption argument. All four exhibits—the Policy, two complaints in the later-described lawsuits that had been brought against Fund by its beneficiaries, and the Settlement Agreement also described later[4]—are expressly referred to in the AC, as Mercer specifically notes at M. 12(M) ¶¶ 7–10. That permits the documents to be taken into account on a pleading motion under either Rule 12(b)(6) or Rule 12(c) in any event (see, e.g., *Venture*

---

1. As discussed a bit later, Mercer's motion is problematic as so categorized. Instead, for the reasons explained in the next section of this opinion, it will be treated as a Rule 12(c) motion to dismiss.

2. Further citations to ERISA provisions will refer to the section numbering in Title 29, rather than to ERISA's internal numbering.

3. As M.R. Mem. 1–2 correctly notes, a Rule 12(b)(6) motion would not have been in order

because Mercer filed its Answer before bringing the motion.

4. Those exhibits were attached to Mercer's factual statement filed pursuant to this District Court's General Rule ("GR") 12(M), which was designed to highlight the existence or nonexistence of material facts in dispute for summary judgment motions. Mercer's GR 12(M) statement will be cited "M. 12(M) ¶ —." In the same fashion, "M." will sometimes be used to refer to Mercer's memoranda.

*Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993) and cases cited there). And because Mercer has already assumed for purposes of this motion that the AC's allegations are true, those exhibits appropriately enter into a Rule 12(c) analysis of Mercer's preemption charge. Accordingly Mercer's motion is being treated not under Rule 56 but rather as one seeking judgment on the pleadings, with Aetna's AC allegations being fully credited for that purpose.

### Aetna's Claims

During the years 1987 through 1994 Trustees hired Mercer to serve as Fund's actuary and consultant (AC ¶ 17). Mercer's services included reviewing the plan's current financial status, projecting any future changes, submitting reports to Trustees and warning them if the balances and reserves were inadequate for future needs (*id.*). Mercer received over $2.4 million for performing those professional services (*id.* ¶ 20).

Fund's financial position "substantially deteriorated" during Mercer's tenure (*id.* ¶ 21). But Mercer failed to warn Trustees of the worsening situation, instead submitting reports that characterized the financial position of the Fund as "very good" (*id.* ¶ 22). As a result of Fund's deterioration, Fund beneficiaries brought two lawsuits against Fund and Trustees in this District Court (one brought as a class action by individual beneficiaries, and the other brought by the union), each charging mismanagement and waste of Fund assets (*id.* ¶¶ 7–8). Those two lawsuits were consolidated and then settled pursuant to a Stipulation and Agreement of Settlement ("Settlement Agreement") (*id.* ¶¶ 8–9).[5] As insurer of Fund and Trustees under the Policy, Aetna contributed approximately $13 million to the settlement (*id.* ¶¶ 5, 10).

As a part of the Settlement Agreement, Aetna was assigned and subrogated to all contribution or indemnity rights held by Fund and Trustees against Mercer (*id.* ¶ 13). Aetna then filed this action, alleging that Mercer "failed to discharge its duties as actuary and fund consultant" (*id.* ¶ 23), resulting

in "substantial losses" to the Fund (*id.* ¶¶ 28, 34) to be remedied under one or more of Aetna's theories of negligence, breach of contract or contribution.

### ERISA Preemption of State Law Claims

ERISA § 1144(a) provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655–57, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695 (1995) has expressed the difficulties of divining the proper scope of preemption from that broad-brush language:

> [O]ne might be excused for wondering, at first blush, whether the words of limitation ("insofar as they ... relate") do much limiting. If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James, Roderick Hudson xli (New York ed., World Classics 1980). But that, of course, would be to read Congress' words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality. That said, we have to recognize that our prior attempt to construe the phrase "relate to" does not give us much help drawing the line here.

> \*     \*     \*     \*     \*     \*

> We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.

---

**5.** This Court's colleague Honorable Blanche Manning approved the Settlement Agreement

January 20, 1997. That order is now on appeal.

After examining prior case law and the statutory history, *Travelers, id.* at 657, 115 S.Ct. at 1677–78 concluded:

> The basic thrust of the pre-emption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.

And *Travelers, id.* at 657–59, 115 S.Ct. at 1678 went on to offer examples of the types of state laws for which Congress intended preemption: those that "mandated employee benefit structures or their administration" and those "providing alternative enforcement mechanisms" to what is available under ERISA.

In such terms Aetna's claims are surely not preempted. For example, *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1469 (4th Cir.1996), quoting *Custer v. Sweeney,* 89 F.3d 1156, 1167 (4th Cir.1996),[6] applies *Travelers* and teaches:

> Congress did not intend to preempt "traditional state-based laws of general applicability [that do not] implicate the relations among the traditional ERISA plan entities," including the principals, the employer, the plan, the plan fiduciaries and the beneficiaries.

*Airparts Co. v. Custom Benefit Servs. of Austin, Inc.,* 28 F.3d 1062, 1065 (10th Cir. 1994) (citations omitted) had earlier articulated the same idea:

> Ultimately, if there is no effect on the relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—there is no preemption. As a corollary, actions that affect the relations between one or more of these plan entities and an outside party similarly escape preemption.

Aetna's claims are clearly within those formulations of the no-preemption concepts. First, the state doctrines of negligence, contract and contribution at issue here are "traditional state-based laws of general applicability." And even more importantly, Aetna's claims do not affect relationships governed by ERISA. Aetna, an ERISA fiduciary, brings this action against Mercer as a nonfiduciary service provider—thus affecting a relationship outside of the relationships among "traditional plan entities." Mercer R. Mem. 6 attempts in vain to avoid that conclusion by attempting to cast Aetna in the position of the Fund beneficiaries, not Fund itself or its Trustees. But that contention is unpersuasive, for the resolution of Aetna's claims will focus on the relationship between Mercer and Fund (or Mercer and Trustees), but *not* between Mercer and the beneficiaries.[7]

In addition to looking at whether an action sought to affect an ERISA-governed relationship, *Airparts* asked whether it would affect the ERISA plan administration or benefits. In so doing *Airparts,* 28 F.3d at 1066 considered these factors:

> Plaintiffs make no claim based on any rights under the plan; there is no allegation that any of the plan's terms have been breached. Nor is there any effort to enforce or modify the terms of the plan. Finally, there is no threat that, by allowing this suit to go forward, conflicting regulations will emerge which will destroy the structural unity of the ERISA scheme.

Again Aetna's claims fit the same mold. Aetna does not implicate any Fund provisions, nor does it seek to affect Fund benefits. Instead Aetna's claims address the services provided by an outside consultant to

---

**6.** *Custer,* 89 F.3d at 1167 held, after surveying numerous existing district court decisions (*id.* at 1166), that legal malpractice claims against attorneys representing ERISA plans were not preempted:

> We now join this unanimous body of federal law and conclude that [plaintiff's] legal malpractice claim ... does not fall under ERISA's preemptive umbrella. We do so because we do not believe that Congress intended ERISA to preempt state law malpractice claims involving professional services to ERISA plans.

> ERISA does not evince a clear legislative purpose to preempt such traditional state-based laws of general applicability, and permitting [plaintiff's] claim would not undermine the congressional policies that underlie ERISA.

**7.** Because Mercer's contention that Aetna stands in the beneficiaries' shoes fails, its attempted reliance on cases discussing ERISA preemption of state claims involving suits by beneficiaries (M.Mem.8–11) is misplaced. Those cases do not address the situation at hand.

Fund and Trustees in light of the governing contract providing for those services.

Finally, utilizing the notion later articulated in *Travelers* that Congress intended preemption when state law provided an alternate route to ERISA enforcement, *Airparts, id.* at 1065 observed that ERISA trustees who brought suit against nonfiduciary consultants under the state law theories of negligence, fraud and indemnity:

> are not employees resorting to state law to avail themselves of an alternative cause of action to collect benefits, nor do the state laws here specifically apply to ERISA plans or interfere with the calculation of benefits.

Once more that aptly describes Aetna's claims here. Aetna could not have proceeded against Mercer under ERISA, because Mercer was not an ERISA fiduciary. On that score *Pappas v. Buck Consultants, Inc.,* 923 F.2d 531, 540 (7th Cir.1991), quoting *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), has rejected such an attempted federal-question lawsuit:

> [W]ere we to create the cause of action [plaintiff] seeks, we would essentially supplant state-law malpractice claims against professionals who negligently prepare the reports ERISA required. Thus, the federal cause of action he proposes "is ... one traditionally relegated to state law."

To be sure, as Mercer Mem. 10. n. 5 says, ERISA does sometimes preempt claims for which the statute itself provides no remedy—such as certain beneficiary claims against nonfiduciaries.[8] But those situations, unlike the current one, closely implicate ERISA relationships. By contrast, Aetna's state law claims plainly address a non-ERISA relationship and do not affect the administration or benefits of an ERISA plan. Certainly nothing in ERISA's language or its statutory structure or its legislative history evinces any congressional intent to provide nonfiduciaries

in Mercer's position with total insulation from liability for their own misfeasance. This Court considers ERISA's failure to provide a remedy for Aetna's type of lawsuit as further evidence of its claims being outside of ERISA's scope, rather than as supportive of preemption.

In sum, then, Aetna's claims affect neither the relationships governed by ERISA nor the benefits or administration of an ERISA plan nor the enforcement scheme provided by ERISA. Hence they do not interfere with Congress' intent in enacting ERISA and are therefore not preempted by ERISA ¶ 1144(a).

### Conclusion

Aetna's state law claims against Mercer are not preempted under ERISA because they do not "relate to" an ERISA plan within the meaning of ERISA § 1144(a). Mercer's motion to dismiss is consequently denied. This action is set for a status hearing at 9 a.m. June 5, 1997, at which time counsel for the parties should be prepared to discuss the further proceedings required to bring this action to trial.

---

8. For that proposition Mercer points to *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) as having assumed without deciding that such state law claims by beneficiaries against nonfiduciaries would be ERISA-preempted, and then points to *Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 419 (4th Cir.1993) as having so decided post-*Mertens.* But the Fourth Circuit itself has really confirmed the inapplica-

bility of Mercer's argument in that respect to the very different situation now before this Court—a state law malpractice claim brought by an ERISA fiduciary against a nonfiduciary—by expressly rejecting ERISA preemption in precisely such a situation in its own later *Custer v. Sweeney* decision (see n. 6). And as already discussed, that later decision squarely supports the conclusion reached here.