**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

EDWARD D. SOTH, JR.,
Plaintiff-Appellant,

v.

BALTIMORE SUNPAPERS,
INCORPORATED, a Maryland
Corporation; THE BALTIMORE SUN
COMPANY, a Maryland Corporation;
DIANA M. MURPHY, formerly known
as Diana M. Zinda, individually and
in her corporate capacity as Vice

President for Advertising and
Marketing; JACK ROSS, individually
and in his official corporate
capacity as Classified Advertising
Manager; JOHN KIDWELL,
individually and in his corporate
capacity as Automotive Manager;
JAMES BORN, individually and in his
corporate capacity as Automotive
Supervisor,
Defendants-Appellees.

No. 96-2385

EDWARD D. SOTH, JR.,
Plaintiff-Appellant,

v.

BALTIMORE SUNPAPERS,
INCORPORATED, a Maryland
Corporation; THE BALTIMORE SUN
COMPANY, a Maryland Corporation;
DIANA M. MURPHY, formerly known
as Diana M. Zinda, individually and
in her corporate capacity as Vice

President for Advertising and
Marketing; JACK ROSS, individually
and in his official corporate
capacity as Classified Advertising
Manager; JOHN KIDWELL,
individually and in his corporate
capacity as Automotive Manager;
JAMES BORN, individually and in his
corporate capacity as Automotive
Supervisor,
Defendants-Appellees.

No. 96-2390

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Joseph H. Young, Senior District Judge.
(CA-94-1349-Y, CA-94-1350-Y)

Argued: April 9, 1998

Decided: May 4, 1998

Before NIEMEYER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

2

**COUNSEL**

**ARGUED:** Glen Marcus Fallin, Westminster, Maryland, for Appellant. Darrell Robert VanDeusen, KOLLMAN & SHEEHAN, P.A., Baltimore, Maryland, for Appellees. **ON BRIEF:** Randi A. Klein, KOLLMAN & SHEEHAN, P.A., Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This consolidated appeal arises from two suits originally filed by Edward D. Soth, Jr., in the Circuit Court for Baltimore City against his former employer, Baltimore Sunpapers, Inc. and the Baltimore Sun Company, and four of the Sunpapers' former or current managers (collectively the Defendants). The two suits alleged identical state law claims of abusive discharge, violations of the Maryland Antitrust Act, tortious interference with contract, and civil conspiracy. One of the suits, however, also contained a retaliation claim pursuant to 42 U.S.C.A. § 1981 (West 1994). The Defendants removed both suits on the basis that Soth's state law claims were completely preempted by § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185(a) (West 1978). The district court granted Soth's request to withdraw his § 1981 claim and consolidated the suits for consideration of Soth's motion to remand and the Defendants' motion for summary judgment. Soth appeals the district court's order denying Soth's motion to remand and granting summary judgment in favor of the Defendants on all of Soth's claims. Finding no error, we affirm.

We review a district court's grant of summary judgment de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate "if the pleadings,

3

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering whether summary judgment is proper, all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Viewed in the light most favorable to Soth, the facts are as follows.

Soth was employed in September of 1987 by the Sunpapers as an automotive advertising sales representative. His primary duty was selling advertising space in the Baltimore Sun , the Evening Sun, and the Sunday Sun to specific automotive dealership accounts within a certain geographical area. Soth's immediate supervisor was James Born. Born reported to automotive sales manager John Kidwell, who reported to the classified advertising manager, Jack Ross, who reported to the vice-president of advertising and marketing, Diana Murphy -- the four individual defendants named in Soth's complaint.

Soth's employment was governed by a Collective Bargaining Agreement (CBA) between the Washington-Baltimore Newspaper Guild (the union) and the Baltimore Sun Company. Article VIII of the CBA provided that an employee may not be discharged except for just and sufficient cause. Article XX, § 20.1, governing conflicts of interest and the right to engage in outside activities, provided:

> Employees shall be free to engage in any activities outside their working hours which do not constitute service for any interest or publication in competition with the[Sun]. No employee, without permission of the [Sun], shall use in the course of such activities any material or featured title of the [Sun] or exploit in any way the employee's connection with the [Sun].

(J.A. at 402.)

On July 30, 1990, the Sunpapers learned that Soth was engaging in advertising in violation of the CBA's clause restricting employees from engaging in outside activities in competition with the Sunpapers.

4

Soth was seen at Brown's Toyota dealership by George Stinebaugh who handled the Sunpapers' account there. Soth admitted that he was meeting with the General Manager of Brown's to discuss the possibility of a future business relationship in case he ever left the Sunpapers. Soth concedes that since 1989, he performed "print coordination" services and prepared "rough layouts" for placement in newspapers other than the Sunpapers for the Beal GMC Truck, Al Packer Lincoln-Mercury, and Harco Oldsmobile dealerships. In exchange for these advertising services, Beal provided Soth with a 1987 GMC Jimmy Truck; Al Packer paid him $1,000 a month; and Harco paid him $750 per month. Soth earned the equivalent of approximately $24,000.00 per year for his outside advertising work.

On July 31, Soth was notified in writing that he was being placed on a five-day suspension without pay. Jack Ross, one of Soth's supervisors, reviewed the suspension letter with him. Defendants claim that during his suspension, Soth placed two advertisements for his personal advertising clients. Soth claims that the work he did during the suspension was for the Sunpapers and was in response to a telephone call made by one of his coworkers, Rich Watkins, on behalf of Soth's direct supervisor, Born. Soth concedes, however, that during his suspension he called the Harford County Sun, one of the Sunpapers' suburban editions, and instructed the newspaper to rerun a Harco Oldsmobile dealership advertisement that he had prepared a week earlier. On August 3, 1990, Soth was notified in writing that he was being discharged immediately for gross insubordination for violating the terms of his suspension by continuing to engage in the activity of outside advertising by placing ads in the Baltimore Sun and the Harford County Sun on behalf of Harco Oldsmobile.

Soth challenged his discharge through the grievance and binding arbitration provisions of the CBA. On March 25, 1991, the arbitrator, after a two-day hearing and testimony from fourteen witnesses, determined that the employer "had just and sufficient cause" for suspending and discharging Soth, and that Soth was not deprived of due process by the employer. (J.A. at 399.) On August 19, 1991, Soth filed an unfair labor practice charge with the NLRB, claiming that the Sunpapers had terminated him and refused to reinstate him because of his activities on behalf of the Washington-Baltimore News Guild. The NLRB Regional Director determined that Soth's charge did not

5

warrant the issuance of a complaint because it was untimely. Soth appealed that decision, but the NLRB confirmed the Regional Director's determination that the charge had not been timely filed and that further proceedings were therefore barred. Soth next filed charges with the EEOC and the American Arbitration Association which were also dismissed as untimely.

Soth then filed a complaint in the United States District Court for the District of Maryland. The district court dismissed Soth's complaint on October 13, 1992, for lack of subject matter jurisdiction, failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to serve the summons and complaint within 120 days from filing pursuant to Fed. R. Civ. P. 4(j). Soth then filed the two suits in the Circuit Court for Baltimore City which were removed by the Defendants and are presently before us. In those suits Soth claimed that the real reason for his discharge was retaliation for his opposition, six months prior to his termination, to the Sunpapers' decision to offer one automobile dealership a full-page, front-of-section advertisement at one-half of the price that another dealership had regularly paid for it, which Soth believed violated Maryland's Antitrust Act. Specifically, Soth claims that the placement of this advertisement constituted price discrimination and that he was discharged because he threatened to tell the publisher of the Sunpapers and the FTC.

The district court denied Soth's motion to remand, determining that federal jurisdiction over the consolidated suits was proper notwithstanding Soth's withdrawal of his § 1981 claim because Soth's claim for tortious interference with contract was completely preempted by § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a) (West 1978).* The district court exercised supplemental jurisdiction over Soth's remaining state law claims. See 28

_____

*These suits present an exception to the general rule that "federal preemption defenses do not ordinarily permit federal courts to exercise subject matter jurisdiction over claims that a plaintiff predicates on state law." See Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996). The exception is "complete preemption" and that has only been found in a few cases, including § 301 of the Labor Management Relations Act. See Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists, 390 U.S. 557, 560 (1968).

6

U.S.C.A. § 1367 (West 1990). The district court held that Soth's claim for tortious interference with contract was barred by the six-month statute of limitations for § 301 claims. As to Soth's claims under the Maryland Antitrust Act, the district court concluded that Soth had not raised a genuine issue of material fact as to whether a monopoly power existed and was maintained in the relevant market through the Sunpapers' half-price discounting of one advertisement on one day. Furthermore, the district judge stated that no evidence of competitive injury had been introduced in support of Soth's price discrimination claim. The district court noted that Soth's claim for abusive discharge required Soth to demonstrate that he was discharged in violation of a clear mandate of public policy, see Adler v. American Standard Corp., 432 A.2d 464, 473 (Md. 1981), and that his conspiracy claim required a showing that the Sunpapers had agreed to commit an unlawful act, see Yousef v. Trustbank Savings, 568 A.2d 1134, 1139 (Md. Ct. Spec. App. 1990). Because the district court concluded that the Sunpapers did not violate the Maryland Antitrust Act, it followed that there was no violation of public policy and no unlawful act. Accordingly, the district court granted summary judgment for the Defendants on all of Soth's claims.

We have reviewed the record, briefs, and pertinent case law in this matter, and we have had the benefit of oral argument. Our careful review persuades us that the rulings of the district court were correct. Accordingly, we affirm on the reasoning set forth in the district court's thorough opinion. See Soth v. The Baltimore Sun Co., No. Y-94-1349 (D. Md. July 18, 1996).

AFFIRMED