Dr. David CHAPMAN, Plaintiff,

v.

HEALTH WORKS MED GROUP OF WEST VIRGINIA, INC., a West Virginia Corporation, an affiliate corporation of the following named defendants, Corporate Health Dimensions, Inc., and its successor CHD/Meridian Health Care, a corporation, Defendants.

No. 2:01CV37.

United States District Court, N.D. West Virginia.

Oct. 30, 2001.

---

**26.** *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir.1998).

**27.** Doc. # 50 and Doc. # 63.

John L. Rogers, II, Rgers & Melody, Keyser, WV, Daniel R. James, Keyser, WV, for Plaintiff.

John E. Busch, Peter G. Zurbuch, Busch & Talbott, Elkins, WV, Bynum E. Tudor, III, Tudor Law Firm, Nashville, TN, for Defendants.

### ORDER DENYING PLAINTIFF'S MOTION TO REMAND

KEELEY, District Judge.

Before the Court is the plaintiff's motion to remand this civil action to the Circuit Court of Mineral County, which is now ripe for consideration. For the reasons that follow, the Court finds that it has subject matter jurisdiction to hear this civil action and, therefore, **DENIES** the plaintiff's motion to remand.

### I. PROCEDURAL AND FACTUAL BACKGROUND

Dr. David Chapman ("Chapman") filed his civil action in the Circuit Court of Mineral County, West Virginia on May 15, 2001, and then filed an amended complaint on May 24, 2001. The defendants removed the case to this Court on June 15, 2001, following which Chapman filed his motion to remand, contending that his complaint sets forth the elements of breach of contract, detrimental reliance, violation of good faith and fair dealing, fraud and intentional conduct under West Virginia law, and that no cause of action alleges a violation of the Employment Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1001 et. seq. Conse-

quently, Chapman claims there is no basis for this Court's exercise of jurisdiction.

Section 1441 of Title 28 of the United States Code states: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). To be removable under 28 U.S.C. § 1441, a state action must lie within the original jurisdiction of the district court, and its jurisdiction must be ascertainable from the face of the complaint. *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir.1985).

The party seeking removal bears the burden of establishing federal jurisdiction. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Removal jurisdiction is strictly construed because of the significant federalism concerns it raises. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). If federal jurisdiction is doubtful, remand is necessary. *Mulcahey v. Columbia Organic Chem. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994) (citing *In re Business Men's Assur. Co. of America*, 992 F.2d 181, 183 (8th Cir.1993)). In determining whether a complaint raises a federal question, pursuant to 28 U.S.C. § 1331, a court must first discern whether federal or state law creates the cause of action. *Mulcahey*, 29 F.3d at 151. Therefore, the Court must examine the pleadings to determine whether plaintiff's claims were properly removable and, if so, identify facts in the pleadings supporting its jurisdiction.

Chapman's amended complaint contains the following allegations:

(1) Plaintiff resides in Mineral County, West Virginia;

(2) Defendant Health Works Med Group of West Virginia, Inc. is a corporation organized in West Virginia with its principal place of business in Mineral County, West Virginia;

(3) Corporate Health Dimensions, Inc. ("CHD") is a health management company operating as the Westvaco Family Medical Center and is the "de facto" employer of David R. Chapman;

(4) The Westvaco Family Medical Center was under contract with Meridian Occupational Health Care Associates, Inc. until it changed contracts on October 4, 1999;

(5) On August 26, 1999, Meridian Corporate Healthcare merged with CHD, becoming known as CHD Meridian Healthcare;

(6) The Westvaco Family Medical Center continued operating without interruption and with the same employees during the formation/merger;

(7) Upon its formation as a licensed corporation to practice medicine, the Health Works Medical Group of West Virginia, Inc. came under the authority of the West Virginia Board of Medicine and the provisions of the West Virginia Medical Practice Act, West Virginia, Code Chapter 30, Article 3, Section 1 et. seq.;

(8) Corporate Health Dimensions (CHD) named Chapman its sole member and director in the application for certificate of authorization to practice medicine and surgery as a medical corporation in West Virginia;

(9) CHD compelled Chapman to grant it or its designee the "irrevocable and unconditional option" to purchase all the outstanding shares of stock in Health Works Med Group of West Virginia, Inc.;

(10) CHD exercised its stock purchase option after executing a written agreement with Chapman;

(11) On August 26, 1999, Health Works Med Group of West Virginia, Inc. and Chapman created an employment contract;

(12) On October 3, 1999, the contract was executed and signed by Chapman as the president and employee of Health Works Med Group of West Virginia, Inc.;

(13) Paragraph 4 of the contact set forth employee benefits which were to be described in Appendix B. Appendix B was blank;

(14) Michael D'Amario, Executive Vice President of Operations, Primary Care Service Division of CHD, mailed the employment contract to Chapman;

(15) D'Amario met with the employees of the Westvaco Family Medical Center and assured them that nothing would change with regard to "compensation, hours of work, benefits, etc.";

(16) D'Amario "expressly and clearly" informed employees that they would have an uninterrupted continuation of their benefits;

(17) Chapman practiced medicine for 20 years and always carried short term and long term disability insurance as well as life insurance;

(18) On September 15, 1999, Meridian issued a memorandum to Chapman advising him that his disability insurance would cease on his last day of employment with Meridian, but he was eligible to convert to an individual policy if he returned the application and premium within 31 days after his insurance terminated. Neither Chapman nor the employees of Westvaco Family Medical Center exercised this option because of the representations made by D'Amario. Chapman asked D'Amario specifically about his "health, life and disability insurance," and D'Amario again told him that his benefits would continue without interruption or a waiting period;

(19) CHD changed the benefits provided to employees of Health Works Med Group from Fortis to Unum;

(20) On December 13, 1999, Dr. Chapman suffered a "large, left hemispheric cerebral vascular event." Chapman could not continue practicing as a physician and was paid short-term disability benefits for a six-month period. No long-term disability benefits were paid upon expiration of the short-term disability benefit period;

(21) D'Amario was an agent/employee of defendants and was acting within the scope of employment;

(22) The defendants made representations that were false and misleading;

(23) The defendants made representations knowing they were false; and

(24) Chapman believes he has no action against the insurance company but, rather, a direct cause of action against all the defendants.

## II. DISCUSSION

### A. Plaintiff's State Law Claims Relate to His Employee *Benefit Plan*

■ "A state common law cause of action is removable under ERISA if it 'relates to' an employee benefit plan within the meaning of section 514(a), 29 U.S.C. § 1144(a), and falls within the scope of the statute's civil enforcement provisions, found in section 502(a), 29 U.S.C. § 1132(a)." *Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 8 (2nd Cir.1992).

The defendants removed this action on the basis of the Court's federal question jurisdiction. They contend that Chapman's state law causes of actions are connected to certain claims for benefits under

CHD's long-term disability plan and group term life insurance plan.

Chapman argues that his claims are not preempted by ERISA, as he is not seeking benefits from the plan or asserting wrongdoing by the plan personnel. Rather, Chapman contends that he is suing his former employers for damages for making false representations that fraudulently induced him to drop his coverage.

■ Although Chapman asserts breach of contract, detrimental reliance, violation of good faith and fair dealing, fraud and intentional conduct on the part of his employers, Chapman's claims relate to an employee benefit plan and can be distinguished from cases where state law claims were remanded. In *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir. 1989), for example, the court held that the state law claims for breach of contract for employment, promissory estoppel and negligent misrepresentation did not relate to the employee benefit plan and were not preempted by ERISA. The employer made promises to the employees that there would not be more cuts in staff. *Id.* at 117. Subsequently, some of the plaintiffs were terminated before their 62nd birthdays and received lower benefits due to a pension plan amendment. *Id.* The court stated that the state law claims "do not bring into question whether plaintiffs are eligible for plan benefits, but whether they were wrongfully terminated from employment after an alleged oral contract of employment for a term." *Id.* at 120.

In the present case, the essence of the state law claims is that Chapman's employer orally promised that his benefits under the plan would continue without interruption. Although the employees in *Pizlo* sought compensatory damages in terms of wages, pensions, health, life and disability benefits, their state law claims focused on wrongful termination of employment, rather than questioning whether they were eligible for plan benefits. In contrast, Chapman's demand for "damages" is based exclusively on his employer's oral promise for the uninterrupted continuation of plan benefits.

*Custer v. Sweeney*, 89 F.3d 1156 (4th Cir.1996), is also distinguishable. In that case, the Fourth Circuit held that ERISA does not preempt legal malpractice claims against attorneys representing ERISA plans. Furthermore, in *Coyne & Delany Co. v. Selman*, 98 F.3d 1457 (4th Cir.1996), the Fourth Circuit referenced its decision in *Sweeney* and held that a plaintiff's state law professional malpractice claim against insurance providers was not related to the employee benefit plan, and thus was not preempted by ERISA.

In support of its findings in *Coyne v. Delany*, our circuit maintained that the professional malpractice claim at issue there "does not fall within any of the categories of laws that courts have generally held to be preempted by ERISA." *Id.* at 1471 (citing *Sweeney*, 89 F.3d at 1167). It also held that ". . . Virginia's professional malpractice law does not, either directly or indirectly, seek to bind a plan administrator to particular choices or preclude uniform administrative practice." *Id.* Moreover, ". . . Virginia's common law malpractice action is not an 'alternative enforcement mechanism' for employees to obtain ERISA plan benefits." *Id.* (citing *Sweeney*, 89 F.3d at 1167). Finally, the court found that the state law claim did not "implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the fiduciaries and the beneficiaries." *Id.* (citing *Sweeney*, 89 F.3d at 1167).

The state law claims in this case do implicate the relations between ERISA entities. Thus, the reasoning in *Coyne &*

*Delany,* that the ERISA entities were not implicated because the malpractice occurred before the plan became effective and before defendants began to act as Plan Administrator and Plan Supervisor, *id.* at 1471, does not apply here where an oral promise was made by the employer after a plan was already in effect and Chapman was a participant.

Many circuits have held that ERISA preempts suits alleging breaches of oral promises or modifications of pension plans. *See Smith v. Dunham–Bush, Inc.,* 959 F.2d 6 (2nd Cir.1992) (claims of breach of oral promise to pay pension-related benefits and negligent misrepresentation were preempted); *Lister v. Stark,* 890 F.2d 941 (7th Cir.1989) (claims for fraud and breach of oral contract to modify pension plan to permit uninterrupted service credit were preempted); *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290 (5th Cir.1989) (breach of contract claim precluded where plaintiff was orally assured that his retirement benefits would be identical to those of other employees); *Anderson v. John Morrell & Co.,* 830 F.2d 872 (8th Cir.1987) (breach of contract claim preempted, where plaintiff alleged that he was orally promised additional benefits by employer); and *Jackson v. Martin Marietta Corp.,* 805 F.2d 1498 (11th Cir.1986) (breach of contract claim asserting that plaintiff was promised a particular pension service date in an interview was preempted).[1]

Further support for this perspective is found in *Elmore v. Cone Mills Corporation,* 23 F.3d 855, 863 (4th Cir.1994), a case in which the plaintiff's state law claims for breach of contract, fraud, unjust enrichment, breach of fiduciary duty, negligence,

accounting and conspiracy were preempted by § 514(a) of ERISA because all of the claims clearly related to the ERISA-covered plan. There, an employer had made representations in a letter to employees that were not incorporated in the formal plan documents.

While it recognizes that the tort claims alleged in the present case do not expressly refer to ERISA or affect the structure or administration of the plan, this Court believes the plaintiff is using state law as an alternative enforcement mechanism to receive benefits. *See Hampers v. W.R. Grace & Co., Inc.,* 202 F.3d 44, 54 (1st Cir.2000) (holding that the breach of contract claim was an alternative enforcement mechanism). Essentially, Dr. Chapman is attempting to enforce an oral promise regarding the plan in order to obtain benefits in the form of damages from the employer. His claim clearly is preempted under 514(a).

**B. Plaintiff's Claims Are Preempted Under § 502(a) of ERISA.**

■ In addition to concluding that Chapman's state law claims "relate to" the employee benefit plan, this Court also must analyze whether his state law claims are preempted by § 502(a). Because these plans are "employee welfare benefit plans" pursuant to 29 U.S.C. § 1002(1), the defendants assert that the related state law claims are preempted by § 502(a) of ERISA, 29 U.S.C. § 1132(a).

Even though a state law claim may "relate to" an ERISA plan and may be preempted under § 514(a), it may not fall under the civil enforcement scheme of § 502(a). Thus, a state law claim must be

---

1. In *Warren v. Blue Cross & Blue Shield of S.C.,* 129 F.3d 118, 1997 WL 701413 (4th Cir. Nov.12, 1997) (unpublished), the Fourth Circuit Court of Appeals affirmed the district court's determination that §§ 502(a) and

514(a) of ERISA preempted the plaintiff's state law claims for fraudulent inducement and negligent representation based on the employer's representations regarding plaintiff's retirement benefits during negotiations.

preempted by § 502(a) to support removal to federal court. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Romney v. Lin*, 94 F.3d 74, 80 (2nd Cir.1996); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir.), *cert. denied*, 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995); *Lister v. Stark*, 890 F.2d 941, 943 (7th Cir.1989); *Lancaster v. Kaiser Found. Health Plan*, 958 F.Supp. 1137, 1144 (E.D.Va.1997).

Section 502(a) of ERISA states the following:

> (a) Persons empowered to bring a civil action A civil action may be brought
>
> (1) by a participant or beneficiary
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
>
> (3) by a participant, beneficiary or fiduciary,
>
> (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this title or the terms of the plan.

The definition of participant includes "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). The Supreme Court in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), held that "former employee" refers to an employee who has "a reasonable expectation of returning to covered employment" or "a colorable claim to vested benefits."

Although Chapman contends that his claims do not seek the recovery, enforcement or clarification of rights to benefits under an ERISA plan, the damages he demands are couched in terms of policy benefits. In the amended complaint, he asserts that he is entitled to recover the following:

> (1) Long term disability benefits in the amount of $6,000 per month, commencing July 11, 2000 and continuing thereafter;
>
> (2) 20 days of long term disability for the month of June 1999;
>
> (3) Life insurance coverage in the amount of $150,000;
>
> (4) such other and further relief as the law permits to be just and proper.

Plaintiff's Amended Complaint at 5.[2] That language indicates that Chapman, as a former employee and a plan participant, is seeking to recover or enforce benefits due him, based on the oral promise of his employer.[3]

The claims in the case at bar are similar to those in *Smith v. Dunham–Bush*, where the plaintiff sued the employer, rather than the plan, for additional benefits, based on oral assurances of additional monies. The Second Circuit held that Smith essentially sought to clarify his rights to future benefits and, thus, his claim fell

---

**2.** Plaintiff also asserts punitive damages (without specifying an amount) for detrimental reliance, violation of good faith and fair dealing, fraud, and intentional conduct. However, the crux of his demand for all claims is for damages in terms of plan benefits.

**3.** In *Warren*, supra note 1, the Court of Appeals rejected the employee's assertion that he was not seeking benefits, but damages "measured by reference to the benefits due to him under the ERISA plan," concluding that this measurement of damages in terms of the plan benefits amounted to an attempt to "recover or enforce benefits allegedly 'due' to him under that plan." 1997 WL 701413 at *2–3.

within the meaning of § 502(a). *Smith,* 959 F.2d at 11. This Court views Chapman's claims in the same light.

### III. *CONCLUSION*

In summary, although Chapman attempts to distinguish his case from those that fall under the guise of ERISA, on similar facts many courts, including the Fourth Circuit, have ruled that federal law preempts the state law claims.

Accordingly, this Court has subject matter jurisdiction over this civil action because Chapman's amended complaint sets forth a claim under federal law, pursuant to section 514(a) of ERISA, 29 U.S.C. § 1144(a), and § 502(a) of ERISA, 29 U.S.C. § 1132(a). The plaintiff's Motion to Remand is, therefore, **DENIED.** It is so **ORDERED.**

The Clerk is directed to transmit a copy of this Order to all counsel of record.