**Frances DARCANGELO,**
**Plaintiff–Appellant,**

v.

**VERIZON COMMUNICATIONS, INCORPORATED; CORE, Incorporated, Defendants–Appellees.**

**No. 01–1679.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 23, 2002.

Decided May 28, 2002.

**ARGUED:** Edwin R. Burkhardt, Jr., Towson, Maryland, for Appellant. Karen Mary Wahle, O'Melveny & Myers, L.L.P., Washington, D.C., for Appellee Verizon; M. Natalie McSherry, Whiteford, Taylor & Preston, L.L.P., Baltimore, Maryland, for Appellee CORE.

Before LUTTIG, MICHAEL, and KING, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge MICHAEL wrote the opinion, in which Judge LUTTIG and Judge KING joined.

## OPINION

MICHAEL, Circuit Judge.

Frances Darcangelo filed this case in Maryland state court against Verizon Communications, Inc., her employer, and CORE, Inc., the administrator of a disability benefits plan that Verizon sponsors for its employees. Darcangelo's complaint alleges violations of Maryland's medical record confidentiality statute, Md.Code Ann., Health–General §§ 4–302 and 4–307, and the state's unfair and deceptive trade practices statute, Md.Code Ann., Comm. Law §§ 13–301 and 13–303. Claims for invasion of privacy, negligence, and breach of contract are also included.[1] The nub of Darcangelo's complaint is that CORE, acting as the agent of Verizon, solicited and disseminated Darcangelo's private medical information in order to assist Verizon in its efforts to declare Darcangelo a "direct threat" to her coworkers so that she could be fired. Darcangelo, in other words, says that CORE did not obtain or disseminate her medical information for any appropriate purpose. Verizon filed a notice of removal, and the district court determined that removal was proper because Darcangelo's claims were completely preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The court then dismissed all of Darcangelo's claims as preempted. We affirm only the dismissal of Darcangelo's breach of contract claim. The remaining four claims, relating to the confidentiality of medical records, unfair trade practices, privacy, and negligence, cannot be disposed of on preemption grounds at the motion to dismiss stage. This is because the complaint, in setting forth these four claims, charges CORE with conduct that is entirely unrelated to its duties un-

der the ERISA plan. We therefore reverse the district court's dismissal of the four claims and remand the case for further proceedings.

## I.

Because the preemption questions in this case are intertwined with the question of federal jurisdiction, we briefly discuss the basis of the district court's removal jurisdiction. In general, an action filed in state court may be removed to federal court "only if it might have been brought in [federal court] originally." 14B Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 3721, at 292 (3d ed.1998). *See also* 28 U.S.C. § 1441. The district court, after concluding that Darcangelo's complaint raised federal claims under ERISA, determined that it had jurisdiction based on the presence of a federal question. Under the well-pleaded complaint rule, courts "ordinarily ... look no further than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." *Custer v. Sweeney,* 89 F.3d 1156, 1165 (4th Cir.1996). Darcangelo's complaint, filed in Maryland state court, appears to rely only on state law. The district court determined, however, that all of Darcangelo's claims were preempted by ERISA and that both removal and dismissal were appropriate.

In considering the district court's jurisdiction over Darcangelo's complaint, we must distinguish between ordinary conflict preemption and complete preemption. Under ordinary conflict preemption, state laws that conflict with federal laws are preempted, and preemption is asserted as

---

1. Darcangelo filed her original complaint on October 27, 2000, and an amended complaint on December 4, 2000, before service of pro-

cess. For the sake of brevity, we use "complaint" to refer to the amended complaint.

"a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). ERISA § 514 expressly states the scope of ordinary conflict preemption under ERISA: state laws are superseded insofar as they "relate to" an ERISA plan. 29 U.S.C. § 1144(a). Thus, when presented with claims under state law that are said to implicate ERISA, a court (be it state or federal) must determine whether the claims are preempted by ERISA § 514. But "ERISA pre-emption [of a state claim], without more, does not convert a state claim into an action arising under federal law." *Taylor*, 481 U.S. at 64, 107 S.Ct. 1542. Thus, when ERISA is simply asserted as a defense to a state law claim, the state claim is not converted into a federal claim, and there is no federal question giving rise to removal jurisdiction.

■■■ In the case of complete preemption, however, Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63–64, 107 S.Ct. 1542. That is to say, the doctrine of complete preemption "converts an ordinary state common law complaint into one stating a federal claim." *Id.* at 65, 107 S.Ct. 1542. Thus, the doctrine of complete preemption serves as a corollary to the well-pleaded complaint rule: because the state claims in the complaint are converted into federal claims, the federal claims appear on the face of the complaint. *Id.* at 63–65, 107 S.Ct. 1542. The Supreme Court has determined that ERISA's civil enforcement provision, § 502(a) (29 U.S.C. § 1132(a)), completely preempts state law claims that come within its scope and converts these state claims into federal claims under § 502. *Id.* at 65–66, 107 S.Ct. 1542. Thus, when a complaint contains state law claims that fit within the scope of ERISA's § 502 civil enforcement provision, those claims are converted into federal claims, and the action can be removed to federal court.

■■■ As explained in greater detail in part II, we conclude that four of Darcangelo's claims, as currently alleged in her complaint, are neither preempted by ERISA nor transformed into ERISA § 502 claims. Thus, these four claims are not federal in nature and do not themselves give rise to federal jurisdiction. Darcangelo's fifth claim, for breach of contract, is completely preempted and is transformed into a federal claim under ERISA § 502. The contract claim, then, gives rise to federal question jurisdiction, and the removal to federal court was proper. Because federal jurisdiction exists for the contract claim, the district court also had supplemental jurisdiction under 28 U.S.C. § 1367 over Darcangelo's non-preempted state law claims. Accordingly, the district court's exercise of jurisdiction over the complaint was proper.[2]

---

**2.** Verizon's notice of removal, which was filed with CORE's consent, also asserted federal jurisdiction based on diversity of citizenship. After removal Darcangelo filed motions (1) to amend her complaint to add non-diverse parties and (2) to remand the action to state court for lack of subject matter jurisdiction. Verizon and CORE argued that the motion to amend the complaint should be denied on the ground that the amendment was sought to add parties for the sole purpose of defeating federal jurisdiction. *See* 28 U.S.C. § 1447(e). Because the district court concluded that it had federal question jurisdiction, it denied Darcangelo's motion to remand without considering the issues relating to the question of diversity jurisdiction.

## II.

■ Darcangelo argues that under the rules of ordinary conflict preemption, ERISA does not preempt the state law claims alleged in her complaint. In this part we address Darcangelo's first four claims as a group because the same preemption analysis applies to all of them. (These are the claims alleging negligence, invasion of privacy, violation of Maryland's medical record confidentiality statute, and violation of the state's unfair and deceptive trade practices statute.) Briefly stated, our conclusion with respect to the first four claims is as follows. If CORE obtained Darcangelo's medical information in the course of processing a benefits claim or in the course of performing *any* of its administrative duties under the plan, these claims would be "related to" the ERISA plan under § 514 and would therefore be preempted. If, on the other hand, CORE was not performing any of its duties as plan administrator, but obtained the information solely to assist Verizon in establishing that Darcangelo posed a threat to her coworkers, then Darcangelo's first four claims would not be related to the plan. Reading the complaint in the light most favorable to Darcangelo, we conclude that she alleges conduct by CORE that is not related to its duties under the plan. Accordingly, Darcangelo's first four claims are not related to the plan and therefore are not preempted. Darcangelo's fifth claim, for breach of contract, merits a somewhat different analysis, so we will address it separately in part III.

## A.

■ In her complaint Darcangelo bases her first four claims on the allegation that CORE, acting as Verizon's agent and without Darcangelo's consent, "either improperly disseminated to or solicited from" her medical providers "personal and confidential information" about her "mental health condition and treatment." She further alleges that CORE did not have any justification for seeking this information and that CORE did not make any "appropriate use of th[e] information;" rather, CORE was assisting Verizon in its attempt "to have Plaintiff declared a 'direct threat' under the ADA so [Verizon] could terminate her." (Presumably, Darcangelo is suggesting that Verizon planned to fire her but feared liability under the Americans with Disabilities Act of 1990(ADA), 42 U.S.C. § 12101 *et seq.* If that was Verizon's fear, it would have had an affirmative defense against an ADA discrimination claim if it could have proven that Darcangelo posed a "direct threat," specifically, "a significant risk to the health or safety of others that [could not] be eliminated by reasonable accommodation," 42 U.S.C. § 11211(3). *See* 42 U.S.C. § 12113(b).) Simply put, we read Darcangelo's complaint as alleging that CORE solicited her private medical information for the *sole* purpose of helping Verizon establish that she posed a sufficient threat to her coworkers to warrant her discharge.

■ After the case was removed, both Verizon and CORE filed motions to dismiss. Verizon argued that all of the complaint's allegations of wrongful conduct by Verizon and CORE "arise[ ] out of the provision of or administration of . . . 'medical-related care and services' to plaintiff." Similarly, CORE argued that the allegations "go to its actions with regard to handling of medical or mental health information obtained in its capacity of administering [Verizon's] employee welfare plans." The district court accepted the defendants' version of the facts, stating that "the actions complained of in th[is] case . . . grew directly out of[ ] the defendants' administration of an ERISA plan, involving the use of medical records in connection with

the provision of benefits relating to medical care to the plaintiff." The defendants' assertion, which the district court accepted, that the conduct in question arises out of the administration of an ERISA plan might well turn out to be true. But at the motion to dismiss stage, a court must accept the allegations of the complaint as true and view the complaint in the light most favorable to the plaintiff. *GE Investment Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001). Here, it is not apparent from Darcangelo's complaint that the conduct charged had anything to do with administering the employee benefits plan. Indeed, Darcangelo alleges that CORE's solicitation of her medical information from third parties was not justified by any purpose that would result in legitimate use of the information. This allegation suggests that CORE did not seek the information in the course of providing benefits to Darcangelo or performing *any* of its duties under the ERISA plan.

As Verizon's counsel said in oral argument, "the key [question] here is whether the conduct complained of in the plaintiff's complaint is conduct undertaken by CORE in the performance of its plan administration fiduciary duties for an ERISA plan." The answer to this question is precisely what we do not know at this stage of the case, given the absence of any factual record. Indeed, there appear to be substantially differing views among Darcangelo, Verizon, and CORE about what actually did occur. The district court said that Darcangelo "made a claim for benefits at some point under the plan," but there is no allegation to this effect in the complaint, and there is no record to support this factual conclusion. At oral argument Verizon's counsel represented that there had been a claim for benefits. In contrast, CORE's counsel said that no claim for benefits had been made. CORE's counsel

suggested that information might have been sought at Verizon's request, not because of a pending disability claim by Darcangelo, but because "questions [about] disability can arise from the employer as well as from the employee if there's a disability that affects the employee in the workplace." CORE's suggestion (as far as it goes) about what might have happened is not inconsistent with Darcangelo's allegation that the information was not sought in connection with claim processing or any other type of plan administration, but that it was sought solely to determine whether Darcangelo was subject to discharge because she posed a direct threat in the workplace. We are not saying that CORE has conceded the substance of Darcangelo's allegations. It is entirely possible that formal factual development will reveal that CORE's conduct, even if not related to a pending benefits claim by Darcangelo, was authorized by the plan. We have noted the three parties' versions of what happened only to illustrate that the relevant facts are, at this point, very much in dispute.

The conflicting stories offered at oral argument confirm our assessment that Darcangelo's complaint cannot be read to say that CORE obtained her medical information in the course of processing a benefits claim or performing any of its other administrative duties under the ERISA plan. Rather, the complaint, as we read it, makes factual allegations that CORE obtained her medical information solely for inappropriate ends. Because the case got no further than the motion to dismiss stage, the question for us is simply whether Darcangelo's claims based on these factual allegations are preempted by ERISA.

B.

As noted above, ERISA's express preemption provision, § 514, states that

ERISA supersedes all state laws insofar as they "relate to" an ERISA plan. The Supreme Court has recognized that an expansive interpretation of the phrase "relate to" would mean that "for all practical purposes pre-emption would never run its course." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Thus, as the Court put it, "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.* at 656, 115 S.Ct. 1671. An examination of these objectives led the Court to explain that "[t]he basic thrust of [ERISA's] preemption clause ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Id.* at 657, 115 S.Ct. 1671. ERISA was intended to " 'protect ... the interests of participants in employee benefit plans and their beneficiaries, ... by establishing standards of conduct, responsibility, and obligation for fiduciaries ... and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1470 (4th Cir.1996) (quoting 29 U.S.C. § 1001(b)) (first alteration omitted). In light of these ERISA objectives, the Supreme Court has explained that Congress intended to preempt at least three categories of state law under § 514:(1) laws that mandate employee benefit structures or their administration, (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practices, and (3) laws that provide alternative enforcement mechanisms to ERISA's civil enforcement provisions. *Travelers,* 514 U.S. at 658–59, 115 S.Ct. 1671; *see also Coyne & Delany,* 98

F.3d at 1468. These three preemption categories are thus a guide for determining whether a particular state law relates to an ERISA plan.

We now consider whether Darcangelo's first four claims are based on Maryland state laws that fall under one of the three preemption categories set forth above. (The Maryland laws implicated are, again, those relating to negligence, invasion of privacy, the confidentiality of medical records, and unfair and deceptive trade practices.) First, as this list of the relevant Maryland laws indicates, Darcangelo's claims are not based on any state law that seeks to mandate the structure or content of the ERISA plan or how it is administered. Specifically, her claims for relief do not rely on any state law that dictates "the terms of a plan or the type of benefits a plan may provide," imposes "reporting, disclosure or funding requirements," or "affect[s] calculation of benefits." *Coyne & Delany,* 98 F.3d at 1471. Second, Darcangelo's claims are not based on any state law that would bind the plan administrator to particular choices with respect to the plan or that would preclude uniform administrative practices. *Id.* Because she alleges conduct that is entirely outside the scope of plan administration, she does not make any claim for relief that would regulate the structure or process of plan administration. She does not, for example, seek relief that would dictate how a plan administrator must process benefit information, dictate who may have access to such information, or limit the ability of the plan administrator to investigate benefit claims.

This leaves the question of whether Darcangelo's first four claims seek relief under state laws that provide alternative enforcement mechanisms for claims that are actually ERISA claims. *Id.* ERISA's civil enforcement scheme is

set out in § 502, 29 U.S.C. § 1132. A state claim is an alternative enforcement mechanism for ERISA rights if the state claim could be brought as an enforcement action under § 502. In this case, then, determining whether Darcangelo's claims are expressly preempted as relating to an ERISA plan under § 514 turns on whether her claims are alternative enforcement mechanisms to ERISA § 502.[3]

▮ At first blush, it might appear that any claim by an ERISA plan participant or beneficiary against the plan administrator would of necessity be a claim for enforcement of ERISA rights that could be asserted only as a federal claim under § 502. In many cases brought by ERISA beneficiaries against their plan administrators, courts have held state law claims to be preempted as alternative enforcement mechanisms. *See, e.g., Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371, 377–79 (4th Cir.2001); *Hampers v. W.R. Grace & Co.*, 202 F.3d 44 (1st Cir.2000).

Unlike this case, however, those cases involved alleged misconduct by an administrator that was clearly undertaken in the course of carrying out duties under a plan. Still, it might be argued that any state claim by a beneficiary against the plan administrator necessarily " 'implicate[s] the relations among the traditional ERISA plan entities' . . . [such as] the plan fiduciaries and the beneficiaries," *Coyne & Delany*, 98 F.3d at 1469 (quoting *Sweeney*, 89 F.3d at 1167), and that as a result the state claim should be preempted. The Supreme Court has made clear, however, that many "lawsuits against ERISA plans for run-of-the-mill state-law . . . torts committed by [the] ERISA plan" are not preempted, even though these suits "obviously affect[ ] and involv[e] ERISA plans and their trustees." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (citing, *inter alia, Abofreka v. Alston Tobacco Co.*, 288 S.C. 122, 341 S.E.2d 622 (1986)).[4] We

**3.** We explained in part I that it is important to distinguish between ordinary conflict preemption and complete preemption. Under ordinary conflict preemption, a state law claim is preempted if it "relate[s] to" an ERISA plan under § 514, but the claim is completely preempted only if it fits within the scope of ERISA § 502. While the tests for the two categories of preemption are different, they sometimes overlap. Because the "relate to" question in this case turns on whether Darcangelo's claims are alternative enforcement mechanisms to § 502, the conflict preemption and complete preemption tests are the same here. To put it another way, when a state law is completely preempted as an alternative enforcement mechanism under § 502, it will also be "relate[d] to" an ERISA plan and preempted under § 514. On the other hand, a state law that is preempted under § 514 (conflict preemption) will not always be preempted under § 502 (complete preemption). For example, a law that mandates employee benefit structures might not be completely preempted as an alternative enforcement mechanism under § 502, but it would still be preempted according to ordi-

nary conflict preemption principles because it is related to the ERISA plan under § 514.

**4.** A Ninth Circuit case, *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974 (9th Cir. 2001), provides an example of a non-preempted state tort claim that was asserted by an ERISA beneficiary against the plan administrator. In that case the beneficiary brought an action for invasion of privacy against the plan administrator, alleging that the administrator's claims investigator had wangled out personal information about the beneficiary by, among other things, impersonating the beneficiary to third parties, falsely claiming to be a bank loan officer, and misrepresenting to the beneficiary's neighbors that he had volunteered to coach a basketball team. *Id.* at 979–80. The court rejected the idea that "a plan administrator could 'investigate' a claim in all manner of tortious ways with impunity." *Id.* at 984. Because the beneficiary simply alleged "garden variety torts which only peripherally impact daily plan administration," *id.*, the court held that the state invasion of privacy law was not preempted.

conclude, therefore, that the simple fact that a defendant is an ERISA plan administrator does not automatically insulate it from state law liability for alleged wrongdoing against a plan participant or beneficiary.

We now consider specifically whether Darcangelo's claims overlap with any of the enforcement provisions available under ERISA § 502. ERISA's civil enforcement section, § 502, gives plan participants and beneficiaries the right to sue to force disclosure of certain information, to recover benefits due under the plan, to clarify the right to future benefits, or to enforce rights under ERISA or the plan. 29 U.S.C. §§ 1132(a)(1)-(4). Darcangelo's suit does not seek disclosure of information, recovery of benefits, or clarification of her right to future benefits; she seeks neither information nor benefits. The only question is whether her claims are brought as an alternative means of enforcing her rights under ERISA or the plan.

■ Verizon argues that Darcangelo's claims are actually attempts to enforce the fiduciary requirements of ERISA and of this ERISA plan. Specifically, Verizon argues that her claims for relief seek to "define fiduciary duties or address faulty plan administration." *Coyne & Delany,* 98 F.3d at 1471. We agree that if Darcangelo's claims sought to enforce the defendants' fiduciary duties under the ERISA plan, her claims would constitute alternative enforcement mechanisms to § 502 and would therefore relate to the ERISA plan. ERISA § 404 requires that an ERISA fiduciary "shall discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Consistent with § 404, the short-term disability plan here requires the plan administrator, in its fiduciary capacity, "to see that the terms of the Plan are carried out for the exclusive benefit of persons entitled to participate in the Plan." However, CORE's solicitation of Darcangelo's private medical information for the sole purpose of helping Verizon determine whether she posed enough of a threat to her coworkers to warrant her discharge does not, as far as we can tell, have anything to do with CORE's duties with respect to the plan. If CORE's alleged misconduct here is not fiduciary conduct, then Darcangelo's claims are not alternative enforcement mechanisms to a § 502 breach of fiduciary duty action.

■ Generally speaking, an ERISA fiduciary is "any individual who *de facto* performs specified discretionary functions with respect to the management, assets, or administration of a plan." *Sweeney,* 89 F.3d at 1161 (summarizing ERISA's definition of a fiduciary, 29 U.S.C. § 1002(21)(A)). Nevertheless, "[f]iduciary status under ERISA is not an all-or-nothing concept." *Id.* at 1162 (quotations and citation omitted). The same entity may function as an ERISA fiduciary in some contexts but not in others. An entity involved with a benefit plan is a fiduciary "only as to the activities which bring the [entity] within the definition" of fiduciary under ERISA. *Id.* (quotations and citation omitted).

■ The Supreme Court has made clear that misconduct by an entity that sometimes acts as an ERISA fiduciary does not constitute a breach of fiduciary duty just because the misconduct is aimed at a plan participant or beneficiary. More specifically, a breach of fiduciary duty is not established simply by demonstrating that (1) the plaintiff is an ERISA participant or beneficiary, (2) the defendant is (at least sometimes) an ERISA fiduciary, and (3) the defendant wronged the plaintiff. Thus, "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of

some person employed to provide services under the plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich,* 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). In determining whether a defendant was "performing a fiduciary function," the Court instructs us to consider (1) whether the acts in question were like traditional fiduciary decisions, which are typically "decisions about managing assets and distributing property to beneficiaries," *id.* at 231, 120 S.Ct. 2143; and (2) whether treating these acts as fiduciary decisions under ERISA would lead to the undesirable federalization of large swaths of state law, *id.* at 235–36, 120 S.Ct. 2143.

■■ *Pegram* thus requires us to look at Darcangelo's complaint and determine "whether [the entity employed to provide services under the plan] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.* at 226, 120 S.Ct. 2143. If Darcangelo is alleging that CORE, *in the course of processing a benefits claim or performing some other plan duty,* improperly disclosed her private medical information, this would be a claim for breach of fiduciary duty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), and § 502(a)(1)-(3), 29 U.S.C. § 1132(a)(1)-(3). Such a claim would amount to an allegation that CORE, in the course of acting as a fiduciary, that is, in making decisions about "managing assets and distributing property to beneficiaries," *Pegram,* 530 U.S. at 231, 120 S.Ct. 2143, had not acted solely in the interests of the participants and beneficiaries, but had acted in the competing interest of Verizon. This would be an impermissible attempt to use state law to "define fiduciary duties or address

faulty plan administration," *Coyne & Delany,* 98 F.3d at 1471, and would thus constitute an alternative enforcement mechanism to a breach of fiduciary duty claim under § 502.

As explained above, however, Darcangelo's complaint alleges that Verizon and CORE did *not* obtain this information in pursuit of a legitimate or appropriate end. This amounts to an allegation that Verizon and CORE undertook conduct that was entirely unrelated to and outside of the scope of their duties under the plan or in carrying out the terms of the plan. Darcangelo does not allege that CORE improperly performed some traditional fiduciary function, such as "managing assets" or "distributing property" under the plan. *Pegram,* 530 U.S. at 231, 120 S.Ct. 2143. Nor does Darcangelo allege that CORE negligently "discharge[d its] duties," § 404(a)(1), or negligently carried out the terms of the plan. Rather, Darcangelo alleges conduct by CORE that is completely unauthorized—conduct that was not undertaken in the course of carrying out its plan responsibilities. The complaint, in other words, does not simply allege "faulty plan administration," *Coyne & Delany,* 98 F.3d at 1471; rather, it alleges improper conduct so unrelated to the plan that it cannot be termed "plan administration" of any sort. If, as Darcangelo alleges, CORE obtained her private medical information solely at the behest of Verizon to assist Verizon in its attempt to find a reason to discharge her, CORE was not acting in the course of making a benefits determination or performing any other plan function. The clear implication of these allegations is that CORE was not performing a fiduciary function, but was simply behaving as a rogue administrator, acting entirely outside the scope of its duties under the plan.

■■ The facts alleged in this case prompt us to borrow *Pegram's* words: our

"doubt that Congress intended the category of fiduciary administrative functions to encompass" tortious conduct by a plan administrator that is completely unrelated to its duties under the plan "hardens into conviction when we consider the consequences that would follow from [the defendants'] contrary view." *Pegram,* 530 U.S. at 232, 120 S.Ct. 2143. Under the defendants' view, ERISA administrators would enjoy blanket immunity—at least from damages under state tort law—for any manner of wrongful conduct aimed at plan participants and beneficiaries, regardless of how unrelated that conduct is to the ERISA plan. We cannot imagine that Congress would have wanted such a result. As our court has explained, state common law torts such as invasion of privacy and negligence are traditional areas of state authority, and "[f]ederalism concerns strongly counsel against imputing to Congress an intent" to preempt large swaths of state law "absent some clearly expressed direction." *Sweeney,* 89 F.3d at 1167.

■■■ ERISA, as its goals indicate, does not seek to preempt all state laws that might apply to an ERISA plan administrator, but only those laws that undermine the "nationally uniform *administration* of employee benefit plans." *Travelers,* 514 U.S. at 657, 115 S.Ct. 1671 (emphasis added). When an ERISA plan administrator takes action entirely unrelated to the administration of the plan, liability for that action does not threaten the uniformity of plan administration. Likewise, while ERISA establishes " 'standards of conduct, responsibility, and obligation for fiduciaries,' " *Coyne & Delany,* 98 F.3d at 1470 (quoting 29 U.S.C. § 1001(b)), it does not preempt general state laws covering non-fiduciary acts unrelated to an ERISA plan. Finally, while Darcangelo's suit may in some way affect her relationship with CORE and Verizon, it does not "implicate the relations among the traditional ERISA plan entities" with respect to those entities' ERISA functions. *Id.* at 1469 (quoting *Sweeney,* 89 F.3d at 1167). Thus, Darcangelo's claims, as currently alleged in the complaint, "would not undermine the congressional policies that underlie ERISA." *Sweeney,* 89 F.3d at 1167.

In sum, ERISA § 514 preempts all state laws that "relate to" an ERISA plan. A state law relates to an ERISA plan if, among other things, it provides an alternative enforcement mechanism to ERISA's civil enforcement provision, § 502. Section 502 gives plan participants and beneficiaries the right to sue to force disclosure of certain information, to obtain benefits under the plan, or to enforce rights or fiduciary requirements under ERISA or the plan. 29 U.S.C. §§ 1132(a)(1)-(4). Here, the defendants argue that Darcangelo's first four claims are an attempt to enforce the fiduciary provisions of ERISA and the ERISA plan. We conclude, however, that CORE's alleged conduct here is not fiduciary conduct, but rather conduct entirely unrelated to the discharge of its duties under the plan. Accordingly, Darcangelo's first four claims are not an attempt to enforce her rights under ERISA or the ERISA plan and therefore are not alternative enforcement mechanisms to § 502. Because these claims are not alternative enforcement mechanisms for ERISA, they do not rely on state laws that are related to an ERISA plan under § 514. As a result, these claims are not preempted, and we reverse the order dismissing them.

### III.

■■■ We now turn to Darcangelo's fifth claim, her breach of contract claim. Because the contract in question is an ERISA plan, this claim is clearly preempt-

ed. ERISA § 502 permits plan participants to bring an action to "enforce [the participant's] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Accordingly, an action to enforce the terms of a contract, when that contract is an ERISA plan, is of necessity an alternative enforcement mechanism for ERISA § 502 and is therefore "relate[d] to" an ERISA plan and preempted by § 514. *See Aliff v. BP America Inc.,* 26 F.3d 486 (4th Cir.1994); *McMahon v. Digital Equipment Corp.,* 162 F.3d 28, 38 (1st Cir.1998).[5] Because Darcangelo's breach of contract claim is an alternative enforcement mechanism to § 502, it is also completely preempted—that is, transformed into a federal claim. This means that removal was proper.

Nevertheless, when a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502. What was a state claim for breach of contract becomes a federal claim for the enforcement of contractual rights under § 502(a)(1)(B). Of course, § 502 limits a plaintiff to equitable relief, so Darcangelo is not entitled to compensatory and punitive damages on the contract claim. 29 U.S.C. § 1132(a)(1)-(3). However, Darcangelo also seeks injunctive relief, and to that extent her § 502 claim must be considered on the merits. The only plan provision that might provide a basis for Darcangelo's § 502 claim is the plan's fiduciary duty provision, so the § 502 claim must stand or fall as a breach of fiduciary duty claim.

As explained at length in part II, we read Darcangelo's complaint as alleging conduct that is non-fiduciary in nature and unrelated to CORE's duties under the plan. Because the alleged wrongdoing is not based on CORE's conduct as a fiduciary, Darcangelo's § 502 breach of fiduciary duty claim fails to state a claim upon which relief can be granted. We therefore affirm the dismissal of Darcangelo's breach of contract claim, albeit on different reasoning than that used by the district court.

## IV.

To sum up, Darcangelo's complaint alleges non-fiduciary wrongful conduct on the part of CORE and Verizon that is unrelated to their duties under the ERISA plan. Thus, her four state claims for invasion of privacy, negligence, unfair and deceptive trade practices, and medical privacy violations are not preempted. We emphasize that this ruling is based on what was presented to us on appeal, namely, Darcangelo's complaint. We do not rule out the possibility that further factual development, perhaps in summary judgment proceedings, might establish that the four state law claims are preempted. Darcangelo's breach of contract claim is, of course, preempted and is transformed into a federal claim under ERISA § 502 for enforcement of the plan's fiduciary requirements. However, because the conduct alleged is not fiduciary conduct, Darcangelo fails to state a claim upon which relief can be granted. Accordingly, we affirm the district court's order dismissing Darcangelo's breach of

5. The parties do not dispute that the agreement alleged in Count V of the complaint is an ERISA plan, although the complaint does not characterize it as such. Darcangelo's complaint refers to an agreement for medical-related services between herself, Verizon, and CORE. Verizon attached a copy of the agreement to its memorandum in support of its motion to dismiss. Because Darcangelo relies on the agreement in her complaint, it was proper for the district court to consider it in ruling on the motion to dismiss. *See New Beckley Min. Corp. v. Int'l Union, UMWA,* 18 F.3d 1161, 1164 (4th Cir.1994).

contract claim, reverse the order dismissing Darcangelo's four remaining state law claims, and remand for further proceedings consistent with this opinion.

 We offer a final comment because remand returns this case to the district court in a somewhat unsettled jurisdictional posture. Again, we have affirmed the dismissal of Darcangelo's one federal claim, and only state law claims remain. Ordinarily, when "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed [without prejudice] as well." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, when an action has been removed from state court and the district court subsequently loses its basis for original jurisdiction, in most instances the action must be remanded to the state court. *See* 28 U.S.C. § 1447(c); *Roach v. W. Va. Regional Jail and Corr. Facility Auth.,* 74 F.3d 46 (4th Cir.1996). We decline to order a remand to the state court in this case because questions remain about the district court's jurisdiction. As noted above, *see supra* note 2, the parties dispute whether, in light of Darcangelo's attempt to amend her complaint to add non-diverse parties, the district court has diversity jurisdiction regardless of whether there is a federal question. Accordingly, we remand to the district court without the additional instruction to remand to the state court. After the dust settles, if Darcangelo's four current state law claims are all that remain and there is no other basis for original jurisdiction, the district court should consider the propriety of continuing to exercise its supplemental jurisdiction. *See Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218; *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct.

614, 98 L.Ed.2d 720 (1988); 28 U.S.C. § 1367(c).

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*