James L. **MILLER**

v.

**U.S. FOODSERVICE, INC., et al.**

No. CIV. CCB–04–1129.

United States District Court,
D. Maryland.

June 29, 2004.

Benjamin Rosenberg, T. Christine Pham, Rosenberg Martin Funk Greenberg LLP, Paul Mark Sandler, Robert B. Levin, Shapiro Sher Guinot and Sandler, Rosenberg Martin Funk Greenberg LLP, Baltimore, MD, for Plaintiff.

Andrew Gendron, G. Stewart Webb, Jr., John Burnside Howard, Jr., Venable Baetjer and Howard LLP, Baltimore, MD, for Defendants.

## MEMORANDUM

BLAKE, District Judge.

Now before the court is the plaintiff James L. Miller's motion to remand his seven-count complaint for breach of contract and related state-law claims (docket no. 9). Mr. Miller filed his complaint in the Baltimore County Circuit Court, but the defendants removed the case to federal court on April 12, 2004. They argue that the Employee Retirement Income Security Act ("ERISA") completely preempts Mr. Miller's claims, converting them to federal claims under § 502(a) of ERISA, 29 U.S.C. § 1132(a), and affording a basis for federal jurisdiction. Mr. Miller disagrees. For the reasons that follow, the defendants' view is correct and the motion to remand will be denied.

## BACKGROUND

The defendants in this case are: U.S. Foodservice, Inc. ("USF"); two affiliates of USF, Royal Ahold, N.V. and Ahold USA, Inc.; and three individual Royal Ahold executives, Anders C. Moberg, Henny De Ruiter, and Arthur Brouwer. According to the complaint, Mr. Miller was an employee of USF between August 1, 1983 and October 1, 2003, serving as the company's Chief Executive Officer starting in 1994. From 1997 until 2003, Mr. Miller served in addition as USF's President and Chairman of the Board of Directors, and from September 2001 until 2003 he served on Royal Ahold's Executive Board. In 2003, it was discovered that USF had engaged in "serious accounting irregularities." (Compl.¶ 10.) Though Mr. Miller denies any involvement, attributing the irregularities to "subordinate employees" (id.), he says the defendants decided to make him a "scapegoat" (id. ¶ 12). At the defendants' request, Mr. Miller resigned from his executive positions at USF and Royal Ahold on May 13, 2003. (Id. ¶ 13.) He was then notified on September 29, 2003 that he would be terminated completely effective October 1, 2003. (Id. ¶ 8.)

Mr. Miller's complaint relates to various promises that he alleges were made at the time of his resignation. Specifically, Mr. Miller alleges that the defendants "induced" his resignation by assuring him that he would receive extensive contractual health, life insurance, and other post-termination benefits, a severance payment, and "all rights and benefits to which Miller was and is entitled by virtue of his participation in the Ahold USA, Inc. Retirement Benefit Plan for the Members of the Managing Board" (id. ¶ 12). He also alleges that the defendants promised that he

would be vested in the retirement plan, which is governed by ERISA, through December 31, 2003, and that he resigned "in justifiable reliance" on these representations, both oral and written. (*Id.* ¶ 13, 27.) According to Mr. Miller, the defendants reneged on all these promises. As a result, Mr. Miller has sued under theories of breach of contract, anticipatory breach of contract, fraudulent inducement, negligent misrepresentation, and promissory estoppel, seeking compensatory damages, injunctive relief, and a "declaration as to whether and to what extent he is entitled to benefits" including benefits under the retirement plan (*id.* ¶ 39).

Mr. Miller filed his complaint in Baltimore County Circuit Court on March 15, 2004. After the defendants removed the case to this court on April 12, 2004, Mr. Miller filed a motion for remand. That motion has been fully briefed, and no oral argument is necessary. Local Rule 105.6.

## ANALYSIS

Because Mr. Miller has asserted only state-law claims in his complaint, there is a basis for federal removal jurisdiction under the well-pleaded complaint rule only if the doctrine of "complete preemption" converts one or more of his state-law claims into federal claims under ERISA. *See generally Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370–71 (4th Cir.2003); *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 186–87 (4th Cir.2002). Though other claims may be subject to ordinary conflict preemption under ERISA's preemption clause, § 514(a), 29 U.S.C. § 1144(a), complete preemption occurs if the claims fall within the scope of ERISA's civil enforcement provision, § 502(a), 29 U.S.C. § 1132(a). That provision applies to "claims for benefits, entitlement to which must be determined by passing on the validity, interpretation or applicability of a term of an ERISA plan." *Singh v. Pru-*

*dential Health Care Plan, Inc.*, 335 F.3d 278, 283 (4th Cir.), *cert. denied*, —— U.S. ——, 124 S.Ct. 924, 157 L.Ed.2d 743 (2003); *see also Sonoco*, 338 F.3d at 371–72 (identifying "three essential requirements for complete preemption": (1) the plaintiff must have standing under ERISA; (2) the claim must fall within the scope of § 502(a); and (3) "the claim must not be capable of resolution without an interpretation of the contract governed by federal law, i.e., an ERISA-governed employee benefit plan" (internal quotations omitted)). Mr. Miller's claims regarding Royal Ahold's retirement plan satisfy this standard.

As concerns the retirement plan, Mr. Miller appears to be alleging two things: that the defendants promised him that he would receive benefits from the plan if he resigned, and that they promised him that his benefits would be vested through December 31, 2003. (*See* Compl. ¶ 12.) While Mr. Miller characterizes these alleged promises as an assurance that his employer would provide certain benefits, it would be more accurate to say that they were promises by his employer about what he would receive under the retirement plan. Courts repeatedly have held that claims based on such alleged oral promises regarding plan benefits are subject to ERISA preemption. *See Chapman v. Health Works Med Group of W. Va., Inc.*, 170 F.Supp.2d 635, 640 (N.D.W.Va.2001) (citing *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6 (2d Cir.1992); *Lister v. Stark*, 890 F.2d 941 (7th Cir.1989); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir.1989); *Anderson v. John Morrell & Co.*, 830 F.2d 872 (8th Cir.1987); *Jackson v. Martin Marietta Corp.*, 805 F.2d 1498 (11th Cir. 1986)); *see also Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir.2001) ("Generally speaking, ERISA preempts state common law claims of fraudulent or negligent misrepresentation

when the false representations concern the existence or extent of benefits under an employee benefit plan."). *Chapman*, for instance, applied complete preemption to state-law claims seeking disability benefits based on an alleged oral promise that the plaintiff's prior benefits coverage would continue without change following a reorganization by his employer. *See Chapman*, 170 F.Supp.2d at 636–38, 641–42. Such claims, the court reasoned, fall "within the meaning of § 502(a)." *Id.* at 641–42. Similarly, *Smith* ruled that claims based on an employer's promise that the plaintiff would receive a comparable retirement package if he accepted a transfer were completely preempted. *See Smith*, 959 F.2d at 7. "As a suit brought by a plan participant to clarify future benefits in relation to a covered plan," the Second Circuit wrote, "it falls within the scope of section 502(a)(1)(B), which provides an exclusive federal cause of action for the resolution of such disputes." *Id.* at 8. Further, *Lister* held that complete preemption applied to claims based on an employer's alleged inducement of a former employee's return with promises that the employee would receive additional pension service credit contrary to the terms of the ERISA-governed pension plan. *See Lister*, 890 F.2d at 942–43. The Seventh Circuit reasoned that the claims were preempted because ERISA provides "a cause of action to seek increases in … pension benefits." *Id.* at 944. Applying that logic in this case, Mr. Miller's claims would be preempted because they seek increased benefits under the retirement plan, even if the basis for the claims is a promise that also affected Mr. Miller's expected term of employment.[1]

I am persuaded by the reasoning of these cases. Mr. Miller's allegations re-

garding the retirement plan do not relate merely to a promise of benefits or compensation as a matter of contract. He seeks, among other relief, a declaration of his rights under the retirement plan. Thus his claims implicate the interpretation of an ERISA-governed plan, and adjudicating them will not be possible without determining, at a minimum, whether a letter or oral promise may create an entitlement under the plan. *Cf. HealthSouth Rehabilitation Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1010 (4th Cir.1996) ("ERISA simply does not recognize the validity of oral or non-conforming written modifications to ERISA plans."). The claims, therefore, overlap with § 502(a)'s cause of action for claims by a plan participant or beneficiary "to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), and they must be deemed preempted in light of the substantial weight of case law and the Supreme Court's recent admonition that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive." *Aetna Health Inc. v. Davila*, —— U.S. ——, ——, 124 S.Ct. 2488, 2495, 159 L.Ed.2d 312 (2004).

In arguing for a contrary result, Mr. Miller relies on two cases, but neither supports his position. First, in *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116 (4th Cir.1989), the Fourth Circuit held that ERISA did not preempt claims based on an alleged "oral contract of employment for a term," even though an extension of the plaintiffs' tenure would have entitled them to additional benefits under one or more ERISA-governed plans. *Id.* at 120–21. The court also held, however, that

---

**1.** The Fourth Circuit cited both *Smith* and *Lister* favorably in an unpublished opinion closely analogous to this case. *See Warren v.* *Blue Cross & Blue Shield of S.C.*, 129 F.3d 118, 1997 WL 701413, at *4 (4th Cir.1997).

claims "rest[ing] on an allegation that the pension plan was modified by informal and unauthorized amendment" were preempted. *Id.* at 120.[2] Here, the alleged promise that Mr. Miller could continue as a consultant through December 31, 2003 may have given Mr. Miller an employment claim akin to the non-preempted claim in *Pizlo,* but his overall claim to retirement plan benefits requires an examination of the terms of the plan and any modifications made by the defendants' promises, just as did the claims that *Pizlo* held were preempted. Second, *Suburban Hospital, Inc. v. Sampson,* 807 F.Supp. 31 (D.Md. 1992), is distinguishable because it involved a claim not by an ERISA plan participant or beneficiary, but by a third-party care provider that relied on an ERISA health plan's assurances of coverage in providing treatment to a plan participant. *See id.* at 32. The terms of the plan were "entirely immaterial" in that case because the plaintiff was not bound by them. *See id.* at 33; *see also Drs. Reichmister, Becker, Smulyan & Keehn, P.A. v. United Healthcare of the Mid–Atlantic, Inc.,* 93 F.Supp.2d 618, 622 (D.Md.2000) (holding that "ERISA does not preempt a negligent misrepresentation claim made by a third party provider for services rendered to a person who was not covered by the plan at the time of the alleged misrepresentation"). The same cannot be said here because Mr. Miller, as a plan beneficiary, was subject to the language of the retirement plan.

■ Thus, under the controlling case law, Mr. Miller's claims with respect to the retirement plan are completely preempted and converted to an ERISA cause of ac-

tion. Because there is federal jurisdiction—indeed, exclusive federal jurisdiction—over that claim, the only remaining question is whether a remand of Mr. Miller's other claims, to the extent he has any that are not preempted, is appropriate.[3] It is not. Mr. Miller's claims all involve the same basic allegation that the defendants promised him certain benefits and later reneged. As a result, the claims are "so related ... that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), and the exclusive federal jurisdiction over the claims regarding the retirement plan establishes supplemental jurisdiction over any remaining claims. *See, e.g., Darcangelo,* 292 F.3d at 187 (indicating the district court had supplemental jurisdiction over non-preempted state-law claims based on a single related claim subject to complete preemption). The plaintiff's motion to remand will be denied.

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the plaintiff's Motion to Remand Case to Baltimore County Circuit Court (docket nos. 9) is **DENIED;** and

2. copies of this Order and the accompanying Memorandum shall be sent to counsel of record.

---

**2.** *Pizlo* 's reference to preemption in this passage refers to conflict preemption under ERISA's preemption clause rather than complete preemption under § 502(a).

**3.** The defendants' Notice of Removal (docket no. 1) asserts that two other benefits claimed by Mr. Miller are derived from ERISA plans. The parties' briefs on the removal issue, however, focus exclusively on the retirement plan benefits.